**REVISED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 97-30246

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTOINE M. SAACKS, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

December 16, 1997

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Following his jury conviction on charges of bankruptcy fraud, Defendant-Appellant Antoine M. Saacks, Jr. was sentenced to twenty-four months imprisonment, a $7,000 fine, and payment of restitution. In appealing his sentence to this court, Saacks complains that the district court misapplied several of the United States Sentencing Guidelines (the Guidelines). More specifically, he asserts that the district court erred in (1) determining that,

for purposes of § 2F1.1(b)(1)(G), the total amount of debts that he caused to be listed in the bankruptcy petition of Jimmy C's Sports Bar and Grill, Ltd. (Jimmy C's) was a proper measure of the loss that Saacks intended to inflict on the creditors of Jimmy C's, the debts of which Saacks had assumed personally; (2) imposing a two-level increase under § 2F1.1(b)(2)(B) after concluding that those creditors constitute "multiple victims"; and (3) deducing that bankruptcy fraud constitutes a violation of a judicial "process," thereby requiring a two-level increase under § 2F1.1(b)(3)(B). Convinced that the district court did not err reversibly in sentencing Saacks, we affirm.

I

FACTS AND PROCEEDINGS

Saacks and his family owned Jimmy C's. Representing all co-owners, Saacks sold the corporation for about $76,700. Saacks and his father executed a "counter letter" to the purchaser specifying that they "do hereby agree that such liabilities [of Jimmy C's] owed and due as of this signing are [the Saacks'] responsibility." The Saacks subsequently made no payments on Jimmy C's pre-sale debts even though the creditors were referred to Saacks by his vendee.

Although the parties disagree whether Saacks acted with or without authority, none contest that in April 1992, he filed a voluntary petition on behalf of Jimmy C's, seeking relief under Chapter 7 of the Bankruptcy Code. The petition listed debts to more than seventy-five individual creditors constituting an

2

aggregate indebtedness of $74,520.11. The petition listed no assets for Jimmy C's despite the fact that Saacks had signed a corporate tax return filed eleven days before the filing of the bankruptcy petition, which return listed assets worth approximately $118,000. The bankruptcy petition identified Saacks and his relatives as the shareholders, failing to disclose that they had previously sold Jimmy C's for over $75,000 cash and that Saacks and his father had assumed responsibility for its pre-sale debts by virtue of the counter letter.

At a § 314 creditors' meeting held during the month following the filing of the bankruptcy petition, Saacks testified under oath that (1) he was authorized to file the bankruptcy petition, (2) the corporation had no assets, and (3) the purchaser of Jimmy C's had been allowed to acquire and operate the establishment without making any payment to Saacks or his relatives. In reliance on these mendacious representations, the trustee declared the bankruptcy to be a no-asset case.

The gravamen of the government's bankruptcy fraud case was that Saacks had (1) concealed from the creditors, the bankruptcy trustee, and the officers of the bankruptcy court, the significant facts that the debtor corporation had assets, that it had been sold, and that Saacks was personally liable for the pre-sale debts of the corporation; and (2) made false reports on the Bankruptcy Schedules and Statement of Financial Affairs. A jury convicted Saacks of seven counts of bankruptcy fraud for which he was eventually sentenced. His sentence was calculated by adding (1) a

3

base offense level of six for fraud, pursuant to § 2F1.1(a); (2) a six-level increase because the scheme comprised a loss of over $70,000, pursuant to § 2F1.1(b)(1)(G); (3) a two-level increase for violating a judicial or administrative order or process, pursuant to § 2F1.1(b)(3)(B); and (4) a two-level increase for targeting multiple victims of the fraud, pursuant to § 2F1.1(b)(2)(B).

II

ANALYSIS

Two of the three sentencing issues of which Saacks complains can be disposed of with relative ease; the third requires a bit more analysis.  We address the two straight-forward issues first and reserve the more complex one for last.

A.  Loss Caused by Fraud

Section 2F1.1 of the Guidelines specifies a base offense level of six for fraud and provides for incremental increases in the offense level depending on, inter alia, the amount of loss caused by the fraud.[1]  Application Note 7 to § 2F1.1 defines loss in a case involving fraud as "the value of the money, property, or services unlawfully taken," and specifies that "[i]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."[2]  The district court's calculation of loss need not be determined with precision; it need only be a reasonable

---

[1]    United States v. Smithson, 49 F.3d 138, 143 (5th Cir. 1995).

[2]    U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2F1.1 App. Note 7.

4

estimate.[3]

We review the sentencing court's determination of loss for clear error.[4] "[A]s long as the determination is plausible in light of the record as a whole, clear error does not exist."[5] Saacks emphasizes, though, that the question presented by his assignment of error regarding loss is not the amount of the loss <u>vel</u> <u>non</u> but the method used by the district court to calculate the loss. As thus framed, Saacks' complaint implicates an application of the Guidelines, which we review <u>de</u> <u>novo</u>.[6]

Although we agree with Saacks that the total of the debts listed in a fraudulent bankruptcy petition is not necessarily an appropriate measure of the loss intended, we disagree that the sentencing court's use of that figure under the circumstances of this case is error. As noted, Saacks had (1) signed a tax return under penalty of perjury listing assets worth some $118,000 only days before filing the corporation's bankruptcy petition; (2) concealed the fact that he and his father had personally guaranteed all pre-sale debts of Jimmy C's; and (3) withheld the fact that he and his family received roughly $75,000 in payment for

---

[3] <u>United States v. Chappell</u>, 6 F.3d 1095, 1101 (5th Cir. 1993), <u>cert. denied by</u> <u>Mitchem v. United States</u>, 510 U.S. 1183 (1994) <u>and</u> <u>Shephard v. United States</u>, 510 U.S. 1184 (1994).

[4] <u>United States v. Ismoila</u>, 100 F.3d 380, 396 (5th Cir. 1996), <u>cert. denied by</u> <u>Debowale v. United States</u>, 117 S. Ct. 1712 (1997) <u>and</u> <u>Lawanson v. United States</u>, 117 S. Ct. 1858 (1997).

[5] <u>Id.</u>

[6] <u>United States v. Krenning</u>, 93 F.3d 1257, 1270 (5th Cir. 1996).

Jimmy C's.  In light of all the facts and circumstances, Saacks'
contention that the only loss intended was the $2,000 to $12,000 in
used assets of the corporation is unavailing.  Moreover, Saacks
sought to gain through the bankruptcy artifice full insulation of
the sales price of $75,000 received for, inter alia, his personal
liability for debts owed by Jimmy C's to its pre-sale creditors.
Regardless of whether we were to review for clear error or de novo,
we would affirm the district court's assignment of loss for
sentencing purposes.

B.    Multiple Victims

The weakest contention advanced by Saacks is that the district
court erred in determining that his machinations involved "a scheme
to defraud more than one victim."  Without citation to authority,
Saacks contends that the bankruptcy estate alone, and not the
myriad pre-sale creditors of Jimmy C's, was the victim of the fraud
for purposes of § 2F1.1(b)(2)(B).  As urged by the government,
however, the plain language of the Guidelines cannot be
disregarded.  We agree with the reasoning of the Ninth Circuit
which, in upholding a district court's findings that the creditors
and the bankruptcy trustee were victims of bankruptcy fraud,
stated:

> Clearly, the false statement [the defendant] made in
> relation to his bankruptcy case was intended to result in
> an undervaluation of the estate in bankruptcy and thus
> the availability of less money to satisfy the demands of
> the creditors.  Thus, [the defendant] would have
> "obtained something of value from more than one person,"
> that being whatever portion of the estate to which they
> as creditors were entitled but which was hidden by the

6

false statement.[7]

As with the amount of loss, we find no reversible error and therefore affirm the district court's two-level increase under § 2F1.1(b)(2)(B) for defrauding multiple victims.

C.    Violation of Judicial or Administrative Order or Process

Saacks' most vociferous complaint targets the district court's two-level increase for violating "any judicial or administrative order, injunction, decree or process not addressed elsewhere in the Guidelines," pursuant to § 2F1.1(b)(3)(B).  The sentencing court reasoned that Saacks' "conduct involved a fraud on the bankruptcy system, which resulted in a violation of a judicial `process.'"

As Saacks correctly notes, this is an issue of first impression in this circuit and one on which there is a split among the other circuits that have ruled on the question.  And, as this issue clearly involves application of the Guidelines, we review the determination of the district court de novo.

Again, our base point in this analysis is § 2F1.1, the general sentencing provision for all fraud.  In this context we find important the observation that in neither § 2F1.1 nor any other section of the Guidelines is there either a base offense level or an enhancement provision for bankruptcy fraud as such. Consequently, were we to stop with the general sentencing provisions for fraud, we would fail to make any distinction between the most pedestrian federal fraud offense and bankruptcy fraud with

_____

[7]    United States v. Nazifpour, 944 F.2d 472, 474 (9th Cir. 1991) (per curiam) (quoting U.S.S.G. § 2F1.1 App. Note 3).

7

all of its implications of a scheme to dupe the bankruptcy court, the trustee, and the creditor or creditors of the debtor, i.e., the entire federal system of bankruptcy. If we imagine, for example, some simple fraud with a federal nexus implicating one defrauder's attempt to defraud two individuals ("multiple victims" under § 2F1.1(b)(2)(B)) for a targeted amount of $70,000 (the same level as the instant case for purposes of § 2F1.1(b)(1)(G)), our hypothetical defrauder would be sentenced under precisely the same offense level as Saacks, whose skulduggery directly affected the federal bankruptcy system and thus some seventy-five creditors, a bankruptcy trustee, and a bankruptcy judge. In casting about to see if the Guidelines contain any provision that would distinguish Saacks' conduct from our hypothetical simple defrauder we, like the district court before us, focus first and foremost on § 2F1.1(b)(3)(B), which calls for a two-level increase for violation of a judicial or administrative order or process.

Saacks insists that § 2F1.1(b)(3)(B) cannot have been intended to add two levels to fraud's base offense level of six in every sentencing of every person found guilty of bankruptcy fraud. Yet, he urges, that would be the result of deeming the standing orders of the bankruptcy court an "order" and the bankruptcy system a "process" for purposes of the subject subsection of the Guidelines. The principal thrust of Saacks' argument comes from his invoking Application Note 5, which states:

> Subsection (b)(3)(B) provides an adjustment for violation of any judicial or administrative order, injunction, decree or process. If it is established that an entity the defendant controlled was a party to the <u>prior</u>

proceeding and the defendant had knowledge of the prior decree, this provision applies even if the defendant was not a specifically named party in that prior case. For example, a defendant whose business was previously enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, would be subject to this provision.[8]

Although an Application Note is not entitled to the same weight as a Guideline, it is considered authoritative.[9] Saacks insists that the plain language of the Application Note makes clear that the Sentencing Commission intended for this provision to apply in limited circumstances only, i.e., when a particular order, injunction, decree, or process existed previously and was subsequently violated.

Recognizing that a majority of the circuits are of a different persuasion, Saacks attempts to distinguish the cases that have held that bankruptcy fraud warrants an increase under § 2F1.1(b)(3)(B). Saacks describes as "tautological" the Eight Circuit's reasoning in United States v. Lloyd, the first case to address the issue, which concluded that even though the defendant "did not violate a specific judicial order, injunction or decree . . . [he] did violate a judicial process by fraudulently concealing assets from bankruptcy court officers."[10] In criticizing Lloyd, Saacks notes

---

[8]    U.S.S.G. § 2F1.1 App. Note 5 (emphasis added).

[9]    United States v. Alexander, 100 F.3d 24, 26 (5th Cir. 1996), cert. denied, 117 S. Ct. 1273 (1997) ("[W]here the commentary to a guideline section functions to interpret that section or to explain how it is to be applied, a sentencing court is bound to consider its implications, unless it is plainly erroneous or inconsistent with the guidelines.").

[10]    947 F.2d 339, 340 (8th Cir. 1991).

that the court cited neither Application Note 5 nor any other authority for its position. Saacks also faults the Eleventh Circuit's decision in <u>United States v. Bellew</u> for the same reasons.[11] And, Saacks likewise takes issue with the Seventh Circuit's majority opinion in <u>United States v. Michalek</u>.[12]

Further castigating the line of cases that apply the subject enhancement, Saacks insists that this constitutes double-counting. In support of his contention, he urges us to adopt the reasoning of the dissent in <u>Michalek</u>, which states:

> The error of the majority is particularly clear in this case, where the defendant's only violation was the core violation — bankruptcy fraud — upon which his base offense was calculated. The defendant did not violate a bankruptcy "process" in addition to or while committing bankruptcy fraud. He did not do any act except the commission of bankruptcy fraud to trigger application of this enhancement. The district court's use of this enhancement derogated the very structure of the Sentencing Guidelines whereby the core crime corresponds to the base offense level and the enhancements correspond to the particular facts of the crime as it was committed by the defendant.[13]

---

[11] 35 F.3d 518, 521 (11th Cir. 1994) (per curiam)(concluding that the defendant had violated a "judicial order" by disobeying the "mandate of the Bankruptcy Rules and Official Forms that a debtor truthfully disclose assets and liabilities").

[12] 54 F.3d 325 (7th Cir. 1995) (concluding that the enhancement is applicable); <u>see</u> <u>also</u> <u>United States v. Mohammad</u>, 53 F.3d 1426 (7th Cir. 1995).

[13] <u>Michalek</u>, 54 F.3d at 336 (Ferguson, J., dissenting) (citations omitted). Saacks contends that the Seventh Circuit retreated from the majority view in <u>Michalek</u> when it decided <u>United States v. Gunderson</u>, 55 F.3d 1328 (7th Cir. 1995), in which the court looked to Application Note 5 and stated: "From [the language of Application Note 5]. Gunderson concludes that `it appears that the two-point enhancement at issue here is designed to apply when a defendant has had a previous warning.' We agree." <u>Id.</u> at 1333. As Gunderson had been given such a previous warning, however, the

10

Consistent with his position that the Seventh Circuit has backed off from the position of the majority in <u>Michalek</u>, Saacks argues that a growing minority of the circuits —— including the First Circuit[14] and the Second Circuit[15] —— have retreated from the automatic enhancement and now take the position that, without more, § 2F1.1(b)(3)(B) does not automatically mandate a two-level increase in every bankruptcy fraud sentencing.

Not surprisingly, the government urges us to adopt the majority view that bankruptcy fraud violates a judicial process, thereby justifying the two-level increase. In addition to its reliance on <u>Lloyd</u>, <u>Michalek</u>, and <u>Bellew</u>, the government undergirds its position with the recent Tenth Circuit opinion in <u>United States v. Messner</u>, which adopted the majority view by reasoning that:

> Bankruptcy fraud undermines the whole concept of allowing a debtor to obtain protection from creditors, pay debts in accord with the debtor's ability, and thereby obtain a fresh start. When a debtor frustrates those objectives by concealing the very property which is to be utilized to achieve that purpose, the debtor works a fraud on the entirety of the proceedings.[16]

Embracing the <u>Messner</u> logic, the government posits that, as the Bankruptcy Rules and Official Forms require a debtor to disclose all assets and liabilities truthfully,[17] Saacks violated a judicial

---

court determined that the increase was applicable. <u>Id.</u>

[14] <u>United States v. Shadduck</u>, 112 F.3d 523 (1st Cir. 1997).

[15] <u>United States v. Carrozzella</u>, 105 F.3d 796 (2d Cir. 1997).

[16] 107 F.3d 1448, 1457 (10th Cir. 1997).

[17] <u>See</u>, <u>e.g.</u>, Bankruptcy Rules 9009 and 9011, 11 U.S.C.A.

11

order or process within the meaning of the subject Guideline by fraudulently concealing assets and relevant information in the bankruptcy proceedings.[18]  Thus, argues the government, it was not necessary for any particular _prior_ order to issue from the bankruptcy court and then be violated; the mandated standing rules, policies and procedures are laid out for all filers and thus exist _prior_ _to_ the filing of petitions.[19]

Disagreeing with Saacks, the government insists that increasing the offense level for those convicted of bankruptcy fraud will not result in double-counting:  As § 2F1.1 is a broad guideline covering a variety of crimes besides fraud, including deceit and forgery, adjustment of an offender's sentence based on the specific characteristic of his offense, such as the bankruptcy element of bankruptcy fraud, is appropriate.[20]  The government further bolsters its position in support of the sentencing court's two-level increase for Saacks by noting that, even if we were to find that bankruptcy does not constitute a _judicial_ process, it must be an _administrative_ process, to which § 2F1.1(b)(3)(B) applies with equal force.

---

[18]     See, _e.g._, Bellew, 35 F.3d at 521.

[19]     See _id._; see _also_ United States v. Welch, 103 F.3d 906, 907-08 (9th Cir. 1996).

[20]     See Michalek, 54 F.3d at 331.  This is the point at which we, like the Michalek majority, diverge from Judge Ferguson's dissent in that case.  He insists that bankruptcy fraud is the "core violation."  Even if this is true for the conviction, we cannot see it that way for purposes of sentencing.  Within the Guidelines, the "core violation" is fraud, plain and simple; bankruptcy fraud is a specialized, considerably more egregious type of fraud.

12

On this matter of first impression in this circuit, the margin of the majority of the other circuits is admittedly less than overwhelming.  And Saacks is far from frivolous in urging that we cast our lot with the significant minority position which rejects adding two levels to the base offense level for fraud every time it is used in the sentencing calculus for bankruptcy fraud.  Perhaps his most compelling argument is the triple reference in Application Note 5 to "prior" proceedings, decrees, and cases.  We nevertheless remain unconvinced and therefore elect to join the majority which recognizes bankruptcy fraud as implicating the violation of a judicial or administrative order or process within the contemplation of § 2F1.1(b)(3)(B).  We find sound the reasoning of those circuits constituting the majority position, which emphasizes the fact that, even when the fraudulent debtor takes the very first act by filing his petition in bankruptcy, he is acting subsequently to the previously adopted and promulgated standing orders and standard forms, all of which command complete and truthful disclosure.

III

CONCLUSION

Irrespective of the standard of review under which we analyze Saacks' challenges to the district court's factual bases and legal application of the Guidelines, we are convinced that no reversible error infected that court's determination of the sentence it imposed on Saacks: The loss he intended to inflict on the creditors of Jimmy C's exceeded $70,000; the intended victims were multiple;

13

and his fraud on those creditors, the bankruptcy trustee, the bankruptcy court, and thus the entire bankruptcy regime, constituted a violation of judicial or administrative orders or process.  For the foregoing reasons, Saacks' sentence is, in all respects,

AFFIRMED.

14