**Revised October 15, 1998**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 97-11327
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCIE SEDLAK RANDALL,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

September 30, 1998

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Francie Sedlak Randall appeals the district court's loss calculation under U.S.S.G. § 2F1.1, following her conviction on one count of bankruptcy fraud, in violation of 18 U.S.C. §§ 152 and 2. We vacate the sentence and remand for further proceedings.

I

Randall acquired seven single-family properties located in Benbrook, Carrollton, and Fort Worth, Texas.  She did so by

assuming the existing loans on the properties.  The properties, however, did not generate as much income as Randall expected. Unable to make her mortgage payments, Randall filed several petitions for Chapter 13 bankruptcy.

Randall's properties were insured by the United States Department of Housing and Urban Development (HUD) and the Veteran's Administration (VA).[1]  After Randall defaulted, the government agencies were obliged to pay the mortgage companies the amount outstanding on the loans.  The properties were then sold at public auction, each for considerably less than was paid to the mortgage companies.

Randall pled guilty to making false statements on one of her numerous bankruptcy petitions.  Specifically, she admitted to (1) giving a false name, (2) giving a false social security number, and (3) falsely claiming that she had made no prior bankruptcy filings. The district court sentenced Randall to fifteen months in prison and ordered restitution in the amount of $226,513.24.

In calculating Randall's sentence, the district court found that $226,513.24 was the amount of loss attributable to Randall under U.S.S.G. § 2F1.1 (1997).  According to the presentence report, this amount was the loss sustained by HUD and VA in

---

[1] Five of the properties were acquired initially with loans from the Federal Housing Administration (FHA). The other two were acquired with loans from the Veterans' Administration (VA).

disposing of the properties after Randall defaulted.[2]  The district court held Randall responsible for the amount the properties were "sold short,"[3] plus any fees and expenses related to the foreclosure and sale.  According to the loss report prepared by the FBI, on which the probation officer relied, these losses totaled $226,513.24.

## II

Randall contends that the district court erred in making its loss calculation under section 2F1.1.  She argues that the short sale losses and foreclosure expenses are not fairly attributable to her, because those losses would have been incurred even if she had never filed a fraudulent bankruptcy petition.

Section 2F1.1 of the Sentencing Guidelines governs offenses involving fraud or deceit.  The district court's calculation of loss under section 2F1.1 is a finding of fact, reviewable only for clear error.  *See United States v. Tedder*, 81 F.3d 549, 550 (5th Cir. 1996).  The district court's interpretation and application of section 2F1.1, however, is reviewed *de novo*.  *See id.*  Randall's challenge to the method of calculation used by the district court implicates an application of the Guidelines and therefore is

---

[2] According to the presentence report, HUD incurred $181,485 in losses, and VA incurred $45,028.24 in losses.

[3] For a given property, the short sale loss is simply the amount paid out by the government agencies to the mortgage companies, minus the property's selling price at the foreclosure auction.

reviewed *de novo*. *See United States v. Saacks*, 131 F.3d 540, 542-43 (5th Cir. 1997) (applying section 2F1.1).

When calculating loss under section 2F1.1, the district court need only make a reasonable estimate of the loss, given the available information. *See* U.S.S.G. § 2F1.1, comment. (n.8). "In deciding whether the district court arrived at a reasonable estimate of the loss attributable to the Defendants' fraud scheme, we must first determine whether the court used an acceptable method of calculating the amount of loss." *United States v. Krenning*, 93 F.3d 1257, 1269 (5th Cir. 1996). The method "must bear some reasonable relation to the actual or intended harm of the offense." *Id.*

Before a court may attribute losses to a defendant's fraudulent conduct, "there must be some factual basis for the conclusion that th[o]se losses were the result of fraud." *United States v. Eidson*, 108 F.3d 1336, 1346-47 (11th Cir. 1997), *citing* U.S.S.G. § 2F1.1 comment. (n.7); *see also United States v. Daddona*, 34 F.3d 163, 170 (3d Cir. 1994) (vacating loss calculation under section 2F1.1 for lack of evidence that "th[e] loss was due to the fraud of the [defendants]"). In other words, section 2F1.1 is concerned solely with "the amount of loss *caused by the fraud*."[4]

---

[4] The loss calculation under section 2F1.1 is not, however, limited solely to actual losses caused by the fraud. A criminal's intended losses may also be taken into account. *See* U.S.S.G. § 2F1.1 comment. (n.7).

*United States v. Saacks*, 131 F.3d 540, 542 (5th Cir. 1997) (emphasis added).

It is undisputed that HUD and VA incurred the losses described in the record. That is, for each of the seven properties, they received less at auction than they paid the mortgage companies whose loans they insured. They also incurred various fees and expenses in the process, such as brokers' fees, property management fees, advertising expenses, and taxes. There is no evidence, however, that these losses were caused by Randall's fraudulent conduct. To the contrary, the evidence demonstrates that the losses attributed to Randall by the district court resulted from her default on the mortgages. At the sentencing hearing, Special Agent Kimberly Jones testified that the various fees and expenses would be incurred during any foreclosure, regardless of whether a bankruptcy petition is filed. She further testified that at such foreclosures, properties are typically sold short.

Thus the evidence indicates that the government agencies would have incurred the foreclosure losses even if Randall had never filed a fraudulent bankruptcy petition. They still would have had to foreclose on the properties, compensate the mortgage companies, and incur the related fees and expenses. Consequently, it cannot fairly be said that the short sale losses and foreclosure expenses

are attributable to Randall's fraudulent conduct.[5]

Of course, the Government need not show that the losses resulted from the specific conduct for which Randall was convicted. The sentencing court may also consider other "relevant conduct" beyond that giving rise to the criminal conviction. U.S.S.G. § 1B1.3. However, "[f]or conduct to be considered 'relevant conduct' for the purpose of establishing one[']s offense level[,] that conduct must be criminal." *United States v. Peterson*, 101 F.3d 375, 385 (5th Cir. 1996). The Government has not alleged, nor does the evidence suggest, that Randall acted criminally by defaulting on the mortgages, or in the course of obtaining the

---

[5] *United States v. Daddona*, 34 F.3d 163 (3d Cir. 1994), presented a similar scenario. The defendants in *Daddona* were convicted of various counts of fraud stemming from their attempts to disclaim bonds issued in connection with a construction project. *Id.* at 164. The project was financed by a mortgage from the Summit Tax Exempt Bond Fund. *Id.* at 165. With the project only partially completed and far-behind schedule, Summit foreclosed on the project. It then cost Summit $1,500,000 to complete the project. *Id.* at 170. At sentencing, the district court attributed the $1,500,000 amount to the defendants fraudulent conduct. *Id.*

The Court of Appeals reversed, finding that the record contained "no indication that this loss was due to the fraud of the [defendants]." *Id.* It instead found that the losses incurred in the post-foreclosure completion of the project were caused by the contractors' failure to timely fulfill their performance obligations. *Id.* It concluded: "Whatever losses Summit or others may have suffered from [defendants'] fraud, Summit has not demonstrated any losses which can fairly be measured by its cost to complete the project." *Id.* at 172.

Likewise, whatever losses HUD and VA may have incurred from Randall's fraudulent bankruptcy filings, those losses cannot fairly be measured by their short sale losses and foreclosure expenses. Those losses were caused by her default, not her bankruptcy filings.

loans in the first place.  Thus losses stemming solely from her default and the consequent foreclosure are not properly considered in her sentencing.

At most, the evidence suggests that Randall's criminal conduct delayed the government agencies' repossession of the properties. The presentence report found that "[b]y causing serial filings, defendant successfully stalled the foreclosure proceedings against the properties for approximately one year."[6]  That delay may have deprived the government agencies of rental income they could have otherwise earned during that period.  They may also have suffered somewhat worse short sale losses if the properties lost value during the delay.  The sentencing hearing, however, contained no evidence of potential rental income, nor did it contain any

---

[6] Even if Randall's multiple filings did delay foreclosure proceedings, it is unclear from the evidence whether such a delay is fairly attributed to the fraudulent nature of those filings. The filing of any bankruptcy petition operates as a stay on debt collection activities. *See* 11 U.S.C. 362.  Thus the delay may have been caused by the mere fact that Randall filed one or more bankruptcy petitions, not the fact that her petitions contained false statements.

Randall's "serial filings," independent of the false statements therein, may be considered for sentencing purposes if they amount to "relevant conduct" within the meaning of U.S.S.G. § 1B1.3.  To be so considered, however, such conduct must itself be criminal. *See United States v. Peterson*, 101 F.3d 375, 385 (5th Cir. 1996).  It is also possible that Randall's false statements did contribute directly to the delay.  Her false name or her failure to disclose her past bankruptcy petitions may have hindered the bankruptcy court's ability to determine whether additional stays were warranted.  However, unless it can be shown that either her false statements directly contributed to the delay, or her serial filings constitute "relevant conduct," the mere fact that Randall "successfully stalled the foreclosure proceedings" is not necessarily attributable to her crime.

evidence that the short sale losses were greater as a result of the delay.

For these reasons, the district court should not have attributed all of the government agencies' short sale losses and foreclosure expenses to Randall's crime. Such losses resulted from the fact of Randall's default on the mortgages, not her bankruptcy filing. We therefore conclude that $226,513.24 does not reflect the loss caused by Randall's conduct.

The Government responds that even if Randall's crime was not the sole cause of the foreclosure losses, the amount of those losses is nonetheless a reasonable estimate of the losses stemming from Randall's conduct. It bases this argument on the principle that losses under section 2F1.1 may be calculated according to the risk of loss to which victims of criminal conduct are exposed. Our cases have held that it is "proper to calculate loss based on the risk engendered by defendant's criminal conduct." *E.g., United States v. Clements*, 73 F.3d 1330, 1339 (5th Cir. 1996).

Even on this theory, however, the Government fails to show a "reasonable relation to the actual or intended harm of the offense." *United States v. Krenning*, 93 F.3d 1257, 1269 (5th Cir. 1996). There is no evidence that Randall's behavior exposed the government agencies to the full amount of their short sale losses and foreclosure expenses. At no time did Randall's fraud endanger their right to make a claim as a creditor, nor did it threaten

their right to any remedy, such as foreclosure. The Government does not allege that Randall attempted to hide assets. Nor does it allege that Randall's false statements prevented the creditors from receiving notice that their mortgages had become the subject of bankruptcy proceedings.

At most, as discussed above, the fraud may have delayed the government agencies' ability to foreclose on the property. It did not cause, however, the foreclosure itself or the consequent short sale losses and expenses. Those losses were inherent in Randall's default and were not caused by Randall's fraudulent statements on her bankruptcy petition. Because such losses are not properly attributed to Randall's criminal conduct, we find the district court's loss calculation was in error.

## III

Finally, the Government argues that even if Randall is correct that the district court erred in its loss calculation, she cannot demonstrate that correcting this error would reduce her offense level. As support, the Government cites *United States v. Watson*, 966 F.2d 161, 164 (5th Cir. 1992). The defendant in *Watson* challenged the district court's inclusion of certain warehousing fees in his loss calculation. *Id.* In *dicta*, we wrote that even if those costs should have been excluded, the defendant in *Watson* failed to provide us with the amount of those costs. *Id.* Consequently, he could not demonstrate that subtracting those costs

would reduce his loss calculation enough to make a difference in his sentence. *Id.*

We find *Watson* inapposite to the case at hand. The record before us is replete with evidence of the amount incorrectly attributed to Randall's bankruptcy fraud. A brief review of the record demonstrates that at least for the five HUD properties, brokers' fees and taxes alone totaled over $28,000.[7] If such costs were removed from the district court's loss calculation, Randall's eight-level increase would drop to a seven-level increase. *Compare* U.S.S.G. § 2F1.1(b)(1)(I)(1997) (eight level increase for losses exceeding $200,000) *with* U.S.S.G. § 2F1.1(b)(1)(H)(1997) (seven level increase for losses exceeding $120,000). Our *dicta* in *Watson* is therefore inapplicable.

IV

Accordingly, the district court's sentence is vacated, and we remand for new sentencing consistent with this opinion. The district court may also consider whether any perjury guidelines are applicable.

---

[7] We use the HUD properties simply because the record sets forth the HUD losses in greater detail. Obviously, this figure does not include any fees or taxes for the two VA properties. Nor does it include any of the short sale losses erroneously attributed to Randall.