PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

WILLIAM E. BUTNER,
            *Defendant-Appellant.*

No. 00-4882

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

WILLIAM E. BUTNER,
            *Defendant-Appellee.*

No. 00-4918

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-98-215-V)

Argued: December 6, 2001

Decided: January 15, 2002

Before WIDENER, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Widener and Judge Niemeyer joined.

**COUNSEL**

**ARGUED:** Edward Theodore Hinson, Jr., Richard Blair Fennell, JAMES, MCELROY & DIEHL, P.A., Charlotte, North Carolina, for Appellant. Thomas Richard Ascik, Assistant United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Asheville, North Carolina, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

William Eugene Butner appeals, challenging his convictions for bankruptcy fraud and conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. §§ 37 and 152(1). Finding no error, we affirm both convictions. The government cross appeals, contending that the district court erred in sentencing Butner. Because the district court ignored undisputed evidence in assessing the loss amount and refused to increase Butner's offense level for abuse of a judicial process, we vacate the sentence and remand for resentencing.

I.

The crimes involved in this case grew out of the bankruptcy of Johnson Brothers Truckers ("Johnson Brothers"). Butner, a lawyer in solo practice, co-owned both Johnson Brothers and a related company, Amtruc, with Raymond Gerald Johnson. Butner also represented Johnson Brothers, and Johnson was its president.

In the early 1990s both companies ran into financial and tax trouble. Amtruc had to file for Chapter 11 bankruptcy protection in late 1991, and in the same period, Johnson Brothers had failed to make payroll tax payments to the IRS. With IRS approval, Amtruc took over some aspects of Johnson Brothers's business. Amtruc paid Johnson Brothers's payroll, all Johnson Brothers employees went to work for Amtruc, and for a time, the IRS accepted payroll tax payments from Amtruc for Johnson Brothers. Johnson, Butner, and Butner's

wife each helped Johnson Brothers financially as well; the company owed money to all of them. Eventually, however, despite this assistance, Johnson Brothers ran into more serious trouble when Amtruc fell behind in the tax payments.

On July 18, 1992, Johnson Brothers itself filed a bankruptcy petition under Chapter 11. On May 5, 1993, the bankruptcy court appointed Samuel Gorham as the company's bankruptcy trustee and orally ordered that the case be converted involuntarily from Chapter 11 reorganization to Chapter 7 liquidation. Johnson Brothers requested reconsideration of the conversion and the bankruptcy court scheduled a hearing on the request for May 11 and May 25, instructing Gorham to make a recommendation as to conversion by May 25.

In order to determine whether to recommend conversion to Chapter 7, Gorham contacted Johnson Brothers's major creditors, including a bank and the IRS. He also met with Johnson and Butner. Butner told Gorham that he had earlier given Johnson Brothers money in exchange for the right to collect payment on some of its debts, and that he had since been "factoring" the company's receivables, or taking payments that were made on the debts he had purchased. The bankruptcy schedule for Johnson Brothers did not mention any factoring agreement, and Gorham concluded that Butner did not have a legitimate secured interest in Johnson Brothers that would entitle him to a share of the company's receivables — "this was not a typical factoring arrangement."

On May 24, the day before the bankruptcy hearing resumed, Butner deposited $26,866.80 in checks made payable to Johnson Brothers Truckers (or slightly different versions of that name) into a bank account entitled "Wm. E. Butner Special Account."

At the May 25 hearing, Gorham recommended that the Johnson Brothers case be converted to Chapter 7 bankruptcy, and the bankruptcy court so converted it. Gorham then became the Chapter 7 trustee, whose job was no longer to keep Johnson Brothers running but to liquidate its assets. From May 25 on, all mail for Johnson Brothers was to be forwarded to Gorham, and the company's bank accounts were frozen.

However, on that same day — May 25 — Johnson Brothers noti- fied its clients that it was now doing business as "Johnson Truckers" and that the "name change" should have no other impact on "how we do business." On June 4, 1993, Johnson filed articles of incorporation for "Johnson Truckers," giving the address of the trucking terminal Johnson Brothers owned. Amtruc too began to use the name "Johnson Truckers" on some of its invoices, but there was no change, from at least one client's perspective, in the company's business or personnel.

When Gorham visited the Johnson Brothers property several times in June and July 1993, he thus observed a trucking business going on at the site. Butner and Johnson led Gorham to believe that a legitimate separate company was running the business at Johnson Brothers's for- mer location. Although Johnson Brothers owned the terminal, the building had such bad environmental problems that Gorham aban- doned the property rather than selling it, so it remained available for use by Amtruc and "Johnson Truckers." In addition, although the bankruptcy schedule listed more than 50 tractors and trailers as assets of Johnson Brothers, Johnson and Butner told Gorham that Amtruc actually owned the vehicles and that Johnson Brothers only leased them. Accordingly, Gorham did not try to sell the tractors and trailers, which also remained available for use by Amtruc and "Johnson Truckers."

Even when he came to suspect that Amtruc was not a legitimate separate business, Gorham did not move to pierce the corporate veil to obtain Amtruc's assets, because he understood from multiple sources that its financial problems were as bad as those of Johnson Brothers. He continued to work toward liquidation in other ways, including receiving checks for Johnson Brothers not only by mail but also by hand from Johnson, whom some truckers paid in person.

Meanwhile, from May 27 to December 4, 1993, Butner deposited to his own "special account" checks totaling nearly $400,000, made payable to Johnson Brothers, Amtruc, or various versions of these names. Butner maintained that in doing so he acted pursuant to his "factoring" agreement with Johnson Brothers, and sent Gorham a copy of a "factoring agreement" with the company. However, Gorham testified not only that he saw no evidence of a valid factoring arrange- ment but also that he knew nothing about the deposits Butner made

to the special account from May 24 to December 4, 1993, and never authorized them.

Gorham resigned as trustee in August 1994, still ignorant of Butner's deposits. His successor trustee took a more aggressive approach, including initiating adversarial litigation against Butner in the bankruptcy court. In 1995, through subpoenas issued as part of that litigation, the later trustee discovered the 1993 deposits to Butner's "special" account. He moved to pierce the corporate veil to hold Butner, Johnson, Amtruc, and "Johnson Truckers," among others, liable for the debts of Johnson Brothers.

On December 31, 1996, after considering evidence including the deposits involved in this case, the bankruptcy court held Butner, Johnson, Amtruc, and "Johnson Truckers" all liable for the debts of Johnson Brothers. The bankruptcy court explained that "[t]hese entities' finances were so intertwined that even attempting to diagram why one would owe the other becomes an absurdity," that "[m]oney and debts flow between all of these entities and the principals, usually without adequate documentation to understand the transactions," and that "[a]ssets and liabilities were shifted back and forth to present what ever picture was needed at a particular time."

A year and a half later, in August 1998, a grand jury indicted Butner, who ultimately faced one count of conspiracy to commit bankruptcy fraud and eight counts of bankruptcy fraud. Each fraud count concerned a particular group of payments: the pre-conversion deposits of $26,866.80 on May 24, 1993 formed the basis for count 2, and various post-conversion deposits formed the bases for counts 3 through 9. Count 1, the conspiracy count, charged Butner with conspiracy to commit bankruptcy fraud from May 24, 1993 through December 26, 1996, by concealing from the bankruptcy custodians and transferees checks belonging to Johnson Brothers in the approximate amount of $419,470.80, the total amount of the sums involved in all eight fraud counts.

At trial, the Government introduced evidence as to each deposit, including the actual checks and the books of Amtruc and of Johnson Brothers. At the close of the Government's case, the district court dismissed seven fraud counts (counts 3-9) — all of those concerning

checks deposited *after* the May 25 conversion to Chapter 7. The Government had conceded that no testimony linked these checks to specific work done before the conversion. Accordingly, the district court held that the Government had not made its case that Butner had fraudulently concealed those checks. The Government has not appealed that ruling.

At trial, Butner maintained that the "factoring" arrangement was legitimate, and that because he had told Gorham about the "factoring" arrangement at their first meeting, he had not concealed the later deposits to his special account. However, in addition to Gorham's testimony that he had known nothing about the deposits, Johnson testified that *before* conversion, Butner had described his financial relationship to Johnson Brothers as a "loan," not as "factoring," and that Butner had falsified the "factoring agreement" sent to Gorham, creating it after conversion and backdating it.

In instructing the jury as to the conspiracy count and the remaining fraud count, the district court read to the jury the substantive parts of the indictment concerning the seven dismissed counts (but not the charges themselves). The facts recounted in this portion of the indictment concerned deposits made between May 25, 1993, and December 4, 1993. The jury convicted Butner on both the conspiracy count and the remaining fraud count.

At sentencing, the district court set the loss amount attributable to Butner's conduct at $26,866.80, based on the amount of the payment involved in the single pre-conversion fraud conviction, and omitted the additional $392,604 charged in the conspiracy count. Noting that the jury verdict did not bind the court on loss amount, because "the conspiracy conviction does not necessarily entail a finding as to the loss amount beyond the $26,000 figure," the court ruled that "[t]he connection of the checks to the conspiracy, that is beyond the $26,000 figure [the pre-conversion payment] as opposed to the trucking business operated after conversion was not established by the preponderance of the evidence."

The district court refused to increase Butner's offense level for abuse of the process of the bankruptcy court, under the 1998 version of Sentencing Guideline § 2F1.1(b)(4)(B). *U.S. Sentencing Guidelines*

*Manual* (U.S.S.G.) § 2F1.1(b)(4)(B) (1998). Citing a law-review article on the applicability of the guideline, the court reasoned that "the process enhancement should not be applied in a garden variety bankruptcy fraud case like this."

On the basis of Butner's resulting offense level of 12, the district court sentenced him to six months' community confinement and six months' home confinement as part of three years of supervised release.

## II.

Butner attacks his convictions on two grounds.

First, he contends that the Government presented insufficient evidence of his intent and the fact of concealment to support either conviction. A jury verdict "must be sustained if there is substantial evidence, taking the review most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Mitchell*, 209 F.3d 319, 324 (4th Cir. 2000) (citation omitted). Given the circumstances surrounding the deposits, Butner's position as an insider and substantial unsecured creditor of Johnson Brothers, Gorham's testimony, and the jury's opportunity to weigh Butner's credibility as well as that of the other witnesses, we have no trouble concluding that sufficient evidence supported the verdict as to concealment and as to Butner's intent in making the deposits.

Second, Butner contends that the district court erred in reading to the jury portions of the indictment describing Butner's post-conversion deposits. The argument is equally meritless. The conspiracy charge included the post-conversion deposits, and specifically incorporated all of the paragraphs of the indictment that described them, as overt acts charged in connection with the conspiracy. Accordingly, the jury properly considered the evidence with respect to all of those payments, in connection with the conspiracy charge.

Therefore, we reject Butner's attacks on his conviction.

## III.

The Government cross appeals, challenging two rulings that affected Butner's offense level at sentencing: the determination of

loss amount and the refusal to apply a two-level increase for abuse of the judicial process. We consider each in turn.

A.

The Government argues that the district court should have included the full amount charged in the conspiracy count in the loss amount when sentencing Butner. The Government initially maintains that the jury verdict finding Butner guilty of conspiracy requires this result. We disagree. The district court properly ruled that the jury's conspiracy verdict did not necessarily mean that it found beyond a reasonable doubt that Butner had conspired with respect to the post-conversion deposits, because its verdict might have rested solely on Butner's pre-conversion deposit. Nevertheless, the court did err in omitting the amounts of the post-conversion deposits from the loss amount, because it completely overlooked certain uncontroverted evidence, which established that the post-conversion deposits were conduct *relevant* to the conspiracy for sentencing purposes.

In determining the loss amount, a sentencing court may consider relevant conduct that has not been charged and proven at trial, if it is shown by a preponderance of the evidence at sentencing. U.S.S.G. §§ 1B1.3 & cmt. n.1, 2F1.1(b) (2000). The district court ruled that the Government had failed to meet this standard in showing the "connection" of each post-conversion deposit to the conspiracy. Framed as a factual finding, the ruling was actually based on undisputed facts. Although quantity is often a disputed factual issue in setting the loss amount, *see* U.S.S.G. § 2F1.1(b) cmt. 9, here the amount of each payment was not in doubt. Nor were there other factual disputes; rather, both sides agreed on the number of deposits, the payees of the checks deposited, the dates of deposit, the person who deposited them, the absence of any other evidence as to what services each check covered, and the content of the bankruptcy court's ruling. Because the ruling that the Government failed to prove the "connection" of each post-conversion check to the conspiracy constitutes a legal ruling on undisputed facts, not a factual finding, we review it *de novo*. *United States v. Ruhe*, 191 F.3d 376, 390 (4th Cir. 1999).

Our *de novo* review of the record reveals that when the district court ruled that the "connection" between Butner's admitted post-

conversion deposits and the conspiracy had not been proven, it overlooked two sources of evidence as to whether each check that was deposited after conversion belonged to Johnson Brothers (and thus as to whether each check was linked to the conspiracy). First, many of the checks were payable to Johnson Brothers — a strong indication that the money they represented belonged to Johnson Brothers. Second, the bankruptcy court had determined that the three companies, Johnson Brothers, Amtruc, and Johnson Truckers, were really one company during the entire relevant period. That finding linked *all* of the checks to the bankrupt estate and to the conspiracy and was admissible evidence at sentencing. *See United States v. Tatum*, 943 F.2d 370, 381-82 (4th Cir. 1991) (exploring possible effects of prior bankruptcy judgments on future federal criminal proceedings). Thus, undisputed evidence linked each post-conversion check to the conspiracy, and no evidence to any other effect appears in the record. Accordingly, all of the available evidence, without dispute, combined to link each deposit charged in the conspiracy conviction to the conspiracy. Each deposit was therefore relevant conduct, and the district court should have included all of the deposits as part of the loss amount under Sentencing Guidelines 1B1.3 and 2F1.1(b).

B.

The government also contends that the district court erred in refusing to increase Butner's offense level for abuse of the judicial process. U.S.S.G. § 2F1.1(b)(4)(B).

The district court applied the 1998 version of the guideline, which provided for a two-level increase in offense level for a violation of "any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." U.S.S.G. § 2F1.1(b)(4)(B) (1998). The circuits had divided on the question of whether to apply this guideline to bankruptcy fraud. *Compare United States v. Saacks*, 131 F.3d 540, 543-46 (5th Cir. 1997) (yes); *United States v. Guthrie*, 144 F.3d 1006, 1009-11 (6th Cir. 1998) (same); *United States v. Michalek*, 54 F.3d 325, 330-33 (7th Cir. 1995) (same); *United States v. Lloyd*, 947 F.2d 339, 340 (8th Cir. 1991) (per curiam) (same); *United States v. Welch*, 103 F.3d 906, 907-08 (9th Cir. 1996) (per curiam) (same); *United States v. Messner*, 107 F.3d 1448, 1457 (10th Cir. 1997) (same); *United States v. Bellew*, 35 F.3d 518, 519-20 (11th

Cir. 1994) (per curiam) (same), *with United States v. Shadduck*, 112 F.3d 523, 528-30 (1st Cir. 1997) (no); *United States v. Thayer*, 201 F.3d 214, 226-28 (3d Cir. 1999) (same); *and United States v. Carrozella*, 105 F.3d 796, 799-802 (2d Cir. 1997) (same, in dictum), *rev'd in relevant part by United States v. Kennedy*, 233 F.3d 157 (2d Cir. 2000) (rejecting dictum in *Carrozella* and joining the majority of circuits, shortly after Butner's sentencing). Whether the guideline applied to every case of bankruptcy fraud was certainly disputed, and we had not spoken on the issue.

A few days before Butner's sentencing, the Sentencing Commission amended the relevant guideline. The new version endorses the majority interpretation of the old guideline, explicitly applying the increase to a "misrepresentation or other fraudulent action during the course of a bankruptcy proceeding." U.S.S.G. § 2F1.1(b)(4)(B) (2000); *see also* U.S.S.G. § 2F1.1(b)(4)(C). The existence of the new guideline was mentioned at sentencing, but the district court did not rely on it or discuss its applicability.

Although it did not so argue below, the Government maintains that the district court should have applied the new guideline. We disagree. Application of the new guideline would cause *ex post facto* harm to Butner, by "mak[ing] more burdensome the punishment for [his] crime[s], after [their] commission." *United States v. Neilssen*, 136 F.3d 965, 969 (4th Cir. 1998) (internal quotation marks and citation omitted); *see also* U.S.S.G. § 1B1.11(a), (b)(1).

Of course, if a change in a guideline is clarifying rather than substantive, the sentencing court should consider the new guideline in applying the old guideline. U.S.S.G. § 1B1.11(b)(2). An amendment is substantive if "it works a substantive change in the operation of the guideline in this circuit, [with] . . . the effect of changing the law in this circuit." *United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995). In determining whether an amendment is clarifying or substantive, the Sentencing Commission's characterization of it is relevant though not conclusive. *Id.* at 1109-13. Likewise, whether the amendment changes a guideline's commentary or its actual text is relevant though not conclusive; amendments to the commentary on a guideline may be substantive, *see, e.g.*, *id.* at 1112-13, and amendments to the

text of a guideline may be merely clarifying. *See, e.g.*, *United States v. Deigert*, 916 F.2d 916, 917-18 (4th Cir. 1990) (per curiam).

Before the amendment at issue in this case, our circuit had no binding precedent on the guideline's applicability to bankruptcy fraud. Moreover, the amendment introduced an entirely new and separate provision to the guideline's actual text, and the Sentencing Commission did not describe it as clarifying, U.S.S.G. app. A at 68 (2000). In another case in which this court had no precedent contrary to an amendment, in light of that silence, we "accept[ed] the Commission's characterization" that an amendment to the guideline's commentary was clarifying. *Neilssen*, 136 F.3d at 970. In this case, given that the later guideline constitutes an entirely new provision (not just new commentary), and given the pre-amendment lack of authority in this circuit, we again accept the Commission's characterization of the amendment, this time its refusal to find the amendment clarifying. Accordingly, the district court properly based its sentence on the old guideline without reference to the 2000 amendment.

However, we believe that the district court erred in interpreting the old guideline. The pre-amendment version of § 2F1.1(b)(4)(B) clearly provided for a two-level increase in offense level if a defendant violated "any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." U.S.S.G. § 2F1.1(b)(4)(B) (1998). Bankruptcy is a judicial process not addressed elsewhere in the guidelines; the bankruptcy process exists to protect debtors and depends on frank voluntary submissions. Moreover, holding that the guideline does not apply to violators of the process of the bankruptcy court "fail[s] to make any distinction between the most pedestrian federal fraud offense and bankruptcy fraud with all of its implications of a scheme to dupe the bankruptcy court, the trustee, and the creditor or creditors of the debtor, i.e., the entire federal system of bankruptcy." *Saacks*, 131 F.3d at 543-44. Accordingly, we believe, as eight other circuits have held, that bankruptcy fraud constituted an abuse of "judicial . . . process" under U.S.S.G. § 2F1.1(b)(4)(B) (1998). The district court erred in holding to the contrary.

## IV.

For the reasons given, we affirm Butner's convictions. We reverse his sentence, and remand for resentencing with a loss amount of

$419,470.80 and a two-level increase in the offense level for abuse of a judicial process.

*AFFIRMED IN PART, REVERSED AND REMANDED IN PART*