UNITED STATES of America,
Appellee,

v.

Donald K. ABBEY, Defendant–
Appellant.

Docket No. 01–1298.

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 2001.

Decided May 6, 2002.

Robert G. Smith, Assistant Federal Defender for the Western District of New York, (Jay S. Ovsiovitch, on the brief), Rochester, NY, for Defendant–Appellant.

Christopher V. Taffe, Assistant United States Attorney, (Kathleen M. Mehltretter, United States Attorney for the Western District of New York), Rochester, NY, for Appellee.

Before: WALKER, Chief Judge, JACOBS and SACK, Circuit Judges.

PER CURIAM.

Defendant-appellant Donald K. Abbey appeals from his sentence of two concurrent terms of twenty-one months imprisonment entered by the United States District Court for the Western District of New York (Charles J. Siragusa, *District Judge*) on May 23, 2001, after conviction upon a guilty plea to two counts of bank fraud in violation of 18 U.S.C. § 1344(1). He contends that the district court erred because it considered the entire amount of the loan in calculating the loss for purposes of sentencing, instead of determining the loss based on the difference between the total amount of the loan and the amount that could have been obtained with the legitimate assets used to secure the loan. He further contests the amount of the restitution ordered on the ground that the district court had no factual basis upon which to find that the actual loss to the victim amounted to $358,881.88. For the following reasons, we affirm the district court's judgment.

## BACKGROUND

Defendant Abbey was the general manager of D & L Truck and Bus Parts Company ("D & L"). In June of 1998, defendant obtained a revolving credit loan for D & L from Marine Midland Bank ("MMB").[1] The loan was secured by all personal property owned by D & L, including general accounts receivable, equipment fixtures and inventory. Under the terms of the loan agreement, MMB would advance the maximum principal balance of the lesser of $750,000 or a certain maximum percentage of the value of the collateral pledged to MMB. Therefore, the size of the credit line available to D & L depended on the value of the assets, including accounts receivable, used to secure the loan.

At the closing, Abbey submitted D & L invoices as collateral, including approximately twenty-five to thirty falsified invoices representing $130,000 in sales that had never occurred. On June 16, 1998, MMB advanced to D & L a loan of $626,331. Abbey continued to submit falsified invoices in order to induce MMB to permit D & L to draw on its line of credit. At the time MMB discovered the fraud in February of 1999, D & L's outstanding balance amounted to $621,836.62. An in-

---

1. MMB now does business as HSBC Bank, USA.

dependent accountant retained by MMB found that the falsified invoices had allowed D & L to obtain $120,000 in loans from MMB. Based on MMB's filings in state and federal court, D & L was forced into Chapter 11 bankruptcy. After being paid from the proceeds of the liquidation of D & L's collateral, MMB had lost $358,881.88.

At the sentencing hearing, the district court determined that the actual loss to MMB amounted to $358,881.88 and added nine levels to the defendant's base offense level of six pursuant to U.S.S.G. § 2F1.1(b)(1) (2000). The court also ordered restitution in the same amount. After other adjustments not at issue here, the district court calculated defendant's total offense level to be 16. This resulted in a prison sentence of twenty-one months.

## DISCUSSION

### I. *Standard of Review*

■ We review a district court's factual findings of the amount of loss under the Guidelines for clear error and its applica-

tion of the Sentencing Guidelines *de novo. See United States v. Fitzgerald,* 232 F.3d 315, 318 (2d Cir.2000); *United States v. Germosen,* 139 F.3d 120, 129 (2d Cir.1998).

### II. *Loss Determination*

Abbey contends that the district court's loss determination should have been based on the difference between the total amount of the loan and the portion of the loan that could have been obtained in the absence of any fraud. Section 2F1.1, which governed offenses involving fraud and deceit at the time of Abbey's sentencing, provided a base offense level of six, to be increased depending on the amount of the loss. A loss of greater than $350,000 but less than $500,000 resulted in an increase of nine levels. *See* U.S.S.G. § 2F1.1(b)(1)(J) (2000). The district court properly relied on Application Note 8(b) of § 2F1.1, which required that loss due to a fraudulent loan application equal the unpaid balance of the loan when the offense is discovered reduced by the value of the collateral used to secure the loan.[2] *See* U.S.S.G. § 2F1.1

2. Abbey was sentenced under the sentencing guidelines effective prior to November 1, 2001 ("2000 Guidelines"). This opinion is limited to the interpretation of Application Note 8(b) of § 2F1.1 prior to November 1, 2001 and has no bearing on the interpretation of the revised guidelines that became effective on this date ("2001 Guidelines"). Under the 2001 Guidelines, § 2F1.1 has been removed and consolidated with § 2B1.1, and Application Note 8(b), which specifically addressed loss due to fraudulent bank loan applications, has been eliminated. Under the 2001 Guidelines, actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. 2(A)(i) (2001). The Sentencing Commission introduced this definition of actual loss to resolve a circuit split regarding the level of causation required to establish actual loss and to ensure that the level of the defendant's culpability is reflected in the severity of the punishment. *See* U.S.S.G. supp. to app. C, amend. 617, at 186–87.

We recognize that "[a] defendant sentenced under one version of the Guidelines may … be given the benefit of a later revision if the revision represents not a substantive change but merely a clarification of the Sentencing Commission's prior intent." *United States v. Kim,* 193 F.3d 567, 578 (2d Cir.1999). Under Application Note 8(b) of § 2F1.1 of the 2000 Guidelines, applicable here, the amount of the unpaid loan reduced by the value of the collateral is the district court's sole consideration in making the loss determination. The Sentencing Commission explicitly recognized that the amount of the loan unpaid at the time the fraud is discovered might significantly overstate the level of the defendant's culpability, especially where the amount of the loss is unforeseeable by the defendant. *See* U.S.S.G. § 2F1.1 cmt. 8(b). In such cases, the Commission suggested that a downward departure may be warranted in order to make the punishment commensurate with the defendant's culpability; however, the loss calculation was left unaffected.

cmt. 8(b) (2000). In this case, the district court determined the loss to be $358,881.88.

Defendant challenges the district court's loss determination on the basis that the report by MMB's accountant stated that the falsified invoices resulted in MMB extending loans amounting to $120,000, or approximately 19.3% of the $621,836.62 that was due when the fraud was discovered.[3] Therefore, he argues, the loss attributable to the fraud was 19.3% of the $358,881.88 net loss to MMB, or $69,255.85, and that the district court should have increased his offense level by only five levels, instead of the nine levels applicable to a loss from $350,000 to less than $500,000.

■ We agree with defendant that where a finding of loss is based on the victim's actual loss, the district court generally must limit its loss determination to the losses caused by the defendant's fraudulent representations. *See United States v. Stanley,* 12 F.3d 17, 21 (2d Cir.1993). However, in determining the amount of the loss caused by the defendant, Application Note 8(b) of U.S.S.G. § 2F1.1(b)(1) has binding effect on us. *See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution·or a federal statute, or is inconsistent with, or a

plainly erroneous reading of, that guideline."); *United States v. Pedragh,* 225 F.3d 240, 244 (2d Cir.2000) ("[O]ur court has frequently repeated the Supreme Court's statement that the commentary is 'binding authority,' unless it is inconsistent with the underlying guideline.").

■ Application Note 8(b) states that where, as here, "a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." U.S.S.G. § 2F1.1 cmt. 8(b). The note's plain language instructs us that, in the context of fraudulent loan applications, the Sentencing Commission considers the remainder of the loan, after applying the proceeds of the disposition of the collateral to the balance, to be the actual loss attributable to the defendant. The note, fairly read, does not permit a reduction in the loss calculation by the amount of the loan that the bank presumably would have extended absent any fraud. Therefore the district court properly found the loss to be $358,881.88, the difference between the amount of the outstanding balance at the time the fraud was discovered in February of 1999 and the amount recovered from the liquidation of D & L's collateral.

Finally, we note that Abbey never requested a downward departure on the ground that the actual loss overstated his culpability.

---

Under the 2001 Guidelines, rather than establish the unpaid amount of the loan net of collateral, the district court must now find that the losses were reasonably foreseeable and reflect the defendant's culpability. Therefore, the 2001 Guidelines represent a substantive change in the method and purpose of loss calculation, at least in the limited context of fraudulent loan application cases, and, as such, they are of no assistance to the defendant in this appeal. *See United States v. Sabbeth,* 277 F.3d 94, 96–99 (2d Cir.2002).

**3.** In his briefs, defendant argued that $120,000 was 24% of the total outstanding loan. However, that calculation appears to have been incorrectly based on the remainder of the loan after subtracting $120,000 from the total. Thus, for the purposes of this opinion, we shall base defendant's arguments on the 19.3% figure.

This is not a case where the fraudulent documents used to secure funds from MMB were independent from the loan application that induced the loan. For example, if Abbey's original loan application had listed only legitimate assets, but he subsequently submitted fraudulent documents in order to draw down on a line of credit, an argument could be made that the loss under the guidelines would be limited to the amount of the credit drawn down because the deceit had only influenced the lending institution to permit the draw down, not the original loan. But in this case, the fraud is traceable to all funds received by D & L and therefore the loss must be the unpaid balance of the loan reduced by the amount recovered by the sale of the loan collateral as required by Application Note 8(b).

None of the cases cited by defendant in support of his argument deal with fraudulent bank loan applications, to which the Application Note 8(b) directly applies. *See Stanley*, 12 F.3d 17 (fraudulent mailings); *United States v. Randall*, 157 F.3d 328 (5th Cir.1998) (fraudulent bankruptcy petition); *United States v. Marlatt*, 24 F.3d 1005 (7th Cir.1994) (fraudulent sale of title insurance policies). Thus, we find that these cases are inapposite and affirm the district court's loss determination.

III. *Restitution Order*

Defendant challenges the district court's restitution order, arguing that the facts only support a finding that the bank had extended a credit line to D & L, but that no evidence suggests how much D & L actually drew from the credit line. While it is true that 18 U.S.C. § 3663(a)(1)(B) limits the amount of restitution to actual, rather than potential, losses, *see United States v. Germosen*, 139 F.3d 120, 130 (2d Cir.1998), we are not persuaded by defendant's contention that

the district court's restitution order was based on the amount of credit available, rather than the amount the bank actually lent to D & L. The record, including defendant's own position at the time of sentencing, establishes unambiguously that MMB's actual loss equaled \$358,881.88. Thus, we affirm the order of restitution.

### CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.