PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ANTHONY GOINES,
            *Defendant-Appellant.*

No. 01-7500

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-99-74)

Argued: May 9, 2003

Decided: January 28, 2004

Before WILKINS, Chief Judge, and WILKINSON and
LUTTIG, Circuit Judges.

---

Vacated and remanded by published opinion. Chief Judge Wilkins
wrote the majority opinion, in which Judge Wilkinson joins. Judge
Luttig wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Justin Sanjeeve Antonipillai, ARNOLD & PORTER,
Washington, D.C., for Appellant. Eric Matthew Hurt, Assistant
United States Attorney, Abingdon, Virginia, for Appellee. **ON
BRIEF:** John L. Brownlee, United States Attorney, Abingdon, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Anthony Goines appeals the denial of his motion to reduce his sentence pursuant to 18 U.S.C.A. § 3582(c)(2) (West 2000). We vacate and remand for further proceedings.

I.

In January 2000, Goines pled guilty to carrying a firearm during and in relation to a drug trafficking crime, *see* 18 U.S.C.A. § 924(c) (West 2000), and being an unlawful drug user in possession of a firearm, *see* 18 U.S.C.A. § 922(g)(3) (West 2000). These convictions arose from Goines' possession of a firearm while he was selling and using illegal drugs.

The district court sentenced Goines to 60 months imprisonment for the § 924(c) offense and a consecutive term of 24 months for the § 922(g) offense. These terms were the product of separate analyses under the sentencing guidelines because § 924(c) requires a consecutive sentence. *See* 18 U.S.C.A. § 924(c)(1)(D)(ii); *U.S. Sentencing Guidelines Manual* § 5G1.2(a) (1998).[1] With respect to the § 922(g) conviction, the district court, following the cross-references in U.S.S.G. § 2K2.1(c)(1)(A) and U.S.S.G. § 2X1.1(a), applied the guideline for drug trafficking, U.S.S.G. § 2D1.1. The court ultimately arrived at an adjusted offense level of 17, which included a two-level enhancement based on Goines' possession of a firearm during his drug transactions. *See* U.S.S.G. § 2D1.1(b)(1). This offense level, combined with Goines' criminal history category of I, yielded a sentencing range of 24 to 30 months. The court sentenced Goines at the bottom of this range. Goines did not appeal.

After the district court entered its judgment, the Sentencing Commission adopted Amendment 599. This amendment modifies Application Note 2 ("Note 2") to U.S.S.G. § 2K2.4, which governs sentencing

---

[1]All citations to "U.S.S.G." in this opinion refer to the 1998 guidelines manual, and all citations to "U.S.S.G. App. C." refer to the 2002 manual.

for § 924(c) offenses. As is relevant here, Amendment 599 modified Note 2 to include the following language:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). . . .
>
> If the explosive or weapon that was possessed . . . in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under . . . §2K2.1(b)(5) (pertaining to possession of any firearm or ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by th[at] enhancement[ ] because of the relatedness of that conduct to the conduct that forms the basis for the conviction under . . . § 924(c) . . . . For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. § 922(g), the enhancement under §2K2.1(b)(5) would not apply.

U.S.S.G. App. C, amend. 599 (internal quotation marks omitted).[2] In restricting the application of certain enhancements, the Commission sought "to avoid the duplicative punishment that results when sentences are increased under both the statutes and the guidelines for substantially the same harm." *Id.* (Reason for Amendment).

Relying on Amendment 599, Goines filed a § 3582(c)(2) motion asserting that his sentence should be recalculated without the § 2D1.1(b)(1) enhancement. In response, the Government conceded

---

[2]The modifications to Note 2 enacted in Amendment 599 now appear in Application Note 4 to U.S.S.G. § 2K2.4.

that Goines was legally eligible for a sentence reduction but urged that his motion be denied based on other considerations that are relevant under § 3582(c)(2). The district court, however, refused to accept the Government's concession and ruled that there was no legal basis for reducing Goines' sentence. The court reasoned that the restrictions enacted by Amendment 599 do not apply to Goines because the offense for which he received a weapons enhancement—a violation of § 922(g)—was not the offense underlying his § 924(c) conviction.

## II.

We initially consider whether Goines' § 2D1.1(b)(1) enhancement was proper under Amendment 599. Although the district court held that it was, both Goines and the Government maintain that this was error. We agree with the parties.

As is relevant here, federal law provides three ways to penalize a defendant who unlawfully possessed a firearm and used or carried it during a drug trafficking offense. First, the defendant may be convicted and sentenced under § 924(c). Second, if the defendant is convicted of a drug trafficking offense (or sentenced under the drug trafficking guideline as the result of a cross-reference), U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." And third, if the defendant is convicted of unlawful possession of a firearm, his sentence may be enhanced for using the firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5).

Note 2 addresses the circumstances in which more than one of these penalties may apply. Even before it was modified by Amendment 599, Note 2 provided that a defendant who had been convicted of a drug trafficking offense and a § 924(c) violation could not receive a § 2D1.1(b)(1) enhancement in addition to a sentence for the § 924(c) conviction. *See* U.S.S.G. § 2K2.4, comment. (n.2) ("Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm . . . is not to be applied in respect to the guideline for the underlying offense."). Amendment 599 makes clear that it is also improper to impose a § 2K2.1(b)(5) enhancement on a defendant who has been convicted

of a firearms offense along with a § 924(c) violation. *See* U.S.S.G. App. C, amend. 599.

Goines' case falls within a gap between these restrictions. He was convicted of a firearms possession offense, not the drug trafficking offense "underlying" his § 924(c) conviction, but his sentence for that conviction was computed pursuant to the drug trafficking guideline (§ 2D1.1), rather than the firearms possession guideline (§ 2K2.1). Nevertheless, Amendment 599 applies.

It appears that the Commission adopted the relevant portion of Amendment 599 in response to the decision of the Eleventh Circuit in *United States v. Flennory*, 145 F.3d 1264 (11th Cir. 1998). In *Flennory*, as in this case, the defendant pled guilty to violations of § 922(g) and § 924(c), and the district court computed the § 922(g) sentence by cross-referencing § 2D1.1. *See id.* at 1266-67. The Eleventh Circuit upheld this sentence, rejecting the defendant's claim that his sentence was unlawful under Note 2. *See id.* at 1269.

The commentary to Amendment 599 contrasts *Flennory* with *United States v. Smith*, 196 F.3d 676 (6th Cir. 1999), which expressly rejected *Flennory* in order to avoid imposing multiple enhancements based on the same conduct. *See* U.S.S.G. App. C, amend. 599 (Reason for Amendment) (citing *Smith*, 196 F.3d at 679-82). The paragraph of commentary following these citations explains that the purpose of the amendment is to avoid duplicative punishments. *See id.* The best inference from this juxtaposition of citations and commentary is that, in adopting Amendment 599, the Sentencing Commission intended to repudiate *Flennory* and provide that a sentence for a § 922(g) offense may not be enhanced based on conduct that also resulted in a § 924(c) conviction. Indeed, the Eleventh Circuit has held that Amendment 599 overrules its decision in *Flennory*. *See United States v. Brown*, 332 F.3d 1341, 1345-46, 1345 n.6 (11th Cir. 2003). We agree and conclude that if Goines had been sentenced after Amendment 599 was adopted, he would not have been subject to a § 2D1.1(b)(1) enhancement.

### III.

Although Goines' § 2D1.1(b)(1) enhancement was not proper under Amendment 599, this does not necessarily mean that he is eligi-

ble for relief under § 3582(c)(2). Section 3582(c)(2) authorizes the district court to reduce the sentence imposed on "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*), . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The applicable policy statement, U.S.S.G. § 1B1.10, expressly provides that Amendment 599 may be applied retroactively in a § 3582(c)(2) proceeding. *See* U.S.S.G. App. C, amend. 607 ( adding Amendment 599 to the list of retroactive guideline amendments in § 1B1.10(c)). Our precedent suggests that nothing more is required in order for Amendment 599 to be a proper basis for a § 3582(c)(2) motion. *See United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996) (stating that, because the amendment relied on by the movant was listed in § 1B1.10, "a sentence reduction is authorized . . . pursuant to 18 U.S.C. § 3582(c)(2)"). *Fletcher*, however, did not address the question before us—namely, whether an amendment that merely clarifies the meaning of the relevant guideline "lower[s]" the "sentencing range" for purposes of § 3582(c)(2).

As we will explain below, the answer to this question depends on whether the term "sentencing range" refers to the range intended by the Sentencing Commission or the range actually applied by the district court in a particular case. We hold that the "sentencing range" is the range actually applied by the district court.

A.

We begin our analysis with a brief discussion of guidelines amendments, which will help frame our inquiry into the meaning of § 3582(c)(2). By statute, the Sentencing Commission must "periodically . . . review and revise" the guidelines. 28 U.S.C.A. § 994(*o*) (West 1993). In carrying out this function, the Commission may promulgate both clarifying and substantive amendments. *See generally United States v. Butner*, 277 F.3d 481, 489 (4th Cir.) (explaining how to distinguish clarifying amendments from substantive amendments), *cert. denied*, 536 U.S. 932 (2002).

A clarifying amendment "changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant." *United States v. Capers*, 61 F.3d 1100, 1109 (4th Cir. 1995) (internal quotation marks omitted). The Commission often uses clarifying amendments to resolve disagreements among courts of appeals. *See United States v. Innie*, 77 F.3d 1207, 1209 (9th Cir. 1996). A clarifying amendment must be given effect at sentencing and on appeal, even when the sentencing court uses an edition of the guidelines manual that predated adoption of the amendment. *See* U.S.S.G. § 1B1.11(b)(2), p.s.; *Capers*, 61 F.3d at 1109.

Unlike a clarifying amendment, a substantive amendment "has the effect of changing the law in this circuit." *Capers*, 61 F.3d at 1110. Substantive amendments typically reflect new policy choices by the Commission. *See, e.g.*, U.S.S.G. App. C., amend. 634 (Reason for Amendment) (explaining that Commission amended money laundering guidelines because old guidelines did not sufficiently account for seriousness of offense or defendant's degree of involvement). A defendant is not entitled to the benefit of a substantive amendment that was adopted after the guidelines manual used at the defendant's sentencing unless the Sentencing Commission has designated the amendment for retroactive application. *See* U.S.S.G. § 1B1.10(a), p.s.

Even if an amendment is designed merely to elucidate the original intent of the Commission, we will regard it as substantive if it conflicts with our precedent. *See Capers*, 61 F.3d at 1110. Thus, some amendments that would otherwise be considered clarifying will be treated as substantive amendments in this circuit. We will refer to such amendments as "hybrid amendments."

The amendment at issue here, Amendment 599, does not conflict with any decision of this court. For this reason, and in light of the factors set forth in *Butner*, we conclude that Amendment 599 is a clarifying amendment. *Accord United States v. Aquino*, 242 F.3d 859, 865 (9th Cir. 2001).

B.

We now turn to the task of interpreting § 3582(c)(2). In construing this statute, we "must account for [its] full text, language as well as

punctuation, structure, and subject matter." *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993); *see id.* ("Over and over we have stressed that in expounding on a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (internal quotation marks omitted)).

Considering the language alone, we perceive two possible readings of the relevant language of § 3582(c)(2). A narrow reading would authorize a sentence reduction when the "sentencing range [*prescribed by the sentencing guidelines*] has subsequently been lowered" by a retroactive amendment. By contrast, a broad reading would allow a defendant's sentence to be reduced if the "sentencing range [*applied by the district court*] has subsequently been lowered" by a retroactive amendment. The narrow reading would bar § 3582(c)(2) motions relying on clarifying and hybrid amendments, as those amendments do not change the meaning of the guideline and thus do not alter the range *intended* by the guidelines, although the sentencing court may have applied a different range. The broad reading, by contrast, would allow a defendant to file a § 3582(c)(2) motion based on any amendment given retroactive application by the Commission, so long as his sentencing range under the amended guideline would be lower than the range applied by the district court.

Both of these readings are plausible.[3] However, after examining the

---

[3]The dissent rejects our characterization of the broad reading as plausible. As the dissent notes, however, § 3582(c)(2) refers to "the 'sentencing range' on which [the defendant's] term of imprisonment was 'based.'" *Post*, at 23 (quoting 18 U.S.C.A. § 3582(c)(2)). The range on which Goines' sentence was based was the range *applied by the sentencing court*, not the range that that court would have applied if it had interpreted the guidelines correctly. Thus, the language of § 3582(c)(2) amply supports the broad interpretation.

Moreover, while the dissent "would have thought there could be no doubt as to the interpretation of" § 3582(c)(2), *post*, at 23, we consider it significant that there is no case law supporting the narrow reading. It is likewise significant that the Government did not endorse the narrow reading even when afforded the opportunity to do so in this appeal. Indeed, so far as we can tell, no party and no judge other than our col-

role of guideline amendments, the general remedial structure associated with the sentencing guidelines, and the consequences of adopting a broad rather than a narrow construction of § 3582(c)(2), we conclude that the broad reading better effectuates the congressional intent underlying § 3582(c)(2).

1.

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987-2040 (1984), created the Sentencing Commission and gave it the power to promulgate and amend sentencing guidelines. *See generally* 28 U.S.C.A. § 994 (West 1993 & Supp. 2003). In conferring this power, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348 (1991). In other words, Congress anticipated that the Commission would use the amendment process to resolve disagreements among courts of appeals. *See* Douglas A. Berman, *The Sentencing Commission as Guidelines Supreme Court: Responding to Circuit Conflicts*, 7 Fed. Sentencing Rep. 142, 142 (1994).

This activity by the Commission is essential to the proper functioning of the guidelines. One of the main goals of the Sentencing Reform Act was "the elimination of unwarranted sentencing disparity." S. Rep. No. 98-225, at 52 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3235. Divergent interpretations of the guidelines, however, can result in wildly disparate sentences. *See* William W. Wilkins, Jr. & John R. Steer, *The Role of Sentencing Guideline Amendments in Reducing Unwarranted Sentencing Disparity*, 50 Wash. & Lee L. Rev. 63, 71-72 (1993). Moreover, the Supreme Court has noted that Congress apparently intended for the Sentencing Commission to have substantial responsibility for resolving disputes among the circuits. *See Braxton*, 500 U.S. at 348. Consequently, the amendment process is a

---

league has ever even mentioned the narrow reading—let alone embraced it. This does not prove that the broad reading is correct, but it is compelling evidence that the broad reading is sufficiently plausible for us to adopt it if it is supported by other indications of congressional intent.

significant tool for resolving circuit conflicts in order to ensure uniform application of the guidelines.

Clarifying and hybrid amendments are thus necessary to address disagreements among the courts of appeals. While it does not necessarily follow that such amendments should be applied to defendants whose judgments have become final, "Congress has granted the Commission the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." *Id.* (emphasis omitted). The amendment and retroactivity powers operate in tandem: The Commission decides how to modify the guidelines and also decides how such modifications should be implemented. This is appropriate, as the Commission has both the authority and the obligation to enact policies designed to achieve the underlying purposes of the Sentencing Reform Act. *See, e.g.*, 28 U.S.C.A. § 994(c) (listing factors for Commission to consider in formulating guidelines).

An interpretation of § 3582(c)(2) that precluded sentence reductions based on clarifying or hybrid amendments would curtail the ability of the Commission to eliminate sentencing disparities through the amendment process. Although the Commission would retain the power to prevent future misapplications of the guidelines, it would lose the authority to correct past errors, thereby undermining its ability to amend the guidelines in the manner and sequence best calculated to promote the goals of the Sentencing Reform Act. This would likely lead to the Supreme Court having to assume a greater role in resolving circuit conflicts in order to correct errors that could not be remedied by the Commission. Because this redistribution of the burden of rectifying erroneous applications of the guidelines would conflict with the congressional allocation of authority, an interpretation of § 3582(c)(2) leading to such a redistribution—*i.e.*, a narrow interpretation barring motions based on clarifying or hybrid amendments —should be avoided.

2.

In addition to shifting responsibility for resolving circuit conflicts, a narrow reading of § 3582(c)(2) would undermine the remedial scheme created by the Sentencing Reform Act. Under this scheme, a

defendant whose sentence was computed improperly under the guidelines has, at most, three remedies. First, he can challenge the sentence on direct appeal. *See* 18 U.S.C.A. § 3742(a) (West 2000). Second, he can file an application for post-conviction relief pursuant to 28 U.S.C.A. § 2255 (West Supp. 2003). *See* 18 U.S.C.A. § 3582(c)(1)(B) (West Supp. 2003) (authorizing district courts to modify sentences "to the extent . . . expressly permitted by statute"). And third, if the Commission adopts a retroactive amendment demonstrating that the guidelines were applied incorrectly, the defendant can file a § 3582(c)(2) motion.

While we certainly encourage the full exercise of appeal rights, we also recognize that the prospects for appellate relief are uncertain at best when the applicable guideline is ambiguous. Such ambiguities may result in disagreements among courts of appeals, with some courts endorsing more severe sentences than the Commission intended. The Supreme Court is not likely to correct those sentences; as noted above, the Commission bears substantial responsibility for resolving circuit conflicts. Thus, direct review may not provide an adequate remedy for a defendant sentenced incorrectly based on an ambiguous guideline.

For its part, § 2255 provides virtually no remedy at all. The Sentencing Reform Act does not bar § 2255 relief based on incorrect application of the guidelines, but Supreme Court decisions predating the Act state that, in the absence of "a complete miscarriage of justice," § 2255 review is limited to constitutional and jurisdictional challenges. *E.g.*, *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976) (internal quotation marks omitted). Thus, guideline claims ordinarily are not cognizable in § 2255 proceedings. *See United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999); *accord Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998).

This leaves § 3582(c)(2). A narrow interpretation of § 3582(c)(2), however, would bar relief based on amendments that merely elucidate —rather than change—the meaning of the relevant guidelines. This would effectively eliminate all opportunities for correction of a sentence that was consistent with circuit precedent at the time of sentenc-

ing but inconsistent with the intent of the Commission, as expressed in a subsequent hybrid amendment.

We could hold that a miscarriage of justice occurs—and thus § 2255 relief is available—in cases in which the defendant's sentence was consistent with circuit precedent but would be erroneous under a hybrid amendment adopted after the defendant's judgment became final. Such a rule would enable us to adopt a narrow interpretation of § 3582(c)(2) without entirely foreclosing guidelines-based collateral challenges. This approach, however, would shift collateral litigation from a procedure specifically created for guidelines claims to a procedure generally reserved for correction of constitutional and jurisdictional errors.

We do not believe that Congress intended this result. Nor do we believe that Congress—having "necessarily contemplated" conflicting interpretations of the guidelines, *Braxton*, 500 U.S. at 348, and having posited a relatively circumscribed role for the Supreme Court in resolving such conflicts—intended for direct review to serve as the sole remedy for guideline errors. We therefore conclude that a broad interpretation of § 3582(c)(2) best implements the remedial scheme established by the Sentencing Reform Act.

3.

Although it appears from the analysis above that a broad reading of § 3582(c)(2) reflects the intent of Congress better than a narrow reading, we must also consider whether a broad reading would have effects that Congress sought to avoid. We conclude that it would not.

Whether construed broadly or narrowly, § 3582(c)(2) impairs the finality of criminal judgments. We acknowledge that this concern is greater under the broad reading, because that reading affords more leeway for post-judgment motions. Nevertheless, under either reading of the statute, such motions are permitted only in cases that have been selected by the Sentencing Commission. As noted above, Congress endowed the Commission with broad powers to authorize retroactive application of guideline amendments. In so doing, Congress delegated to the Commission the authority to decide when a final judgment may

be revised. Thus, the disruption of finality engendered by a broad interpretation of § 3582(c)(2) is consistent with the legislative design.

Another potential problem resulting from the broad interpretation is that it may confer a windfall on defendants who could have obtained relief on appeal. As we have discussed, however, the prospects for appellate relief are uncertain at best when a guideline or its commentary is ambiguous. Furthermore, a broad interpretation of § 3582(c)(2) does not diminish defendants' incentive to raise possibly meritorious sentencing claims on appeal, as § 3582(c)(2), unlike direct review, requires the intervention of the Sentencing Commission and, additionally, is subject to the discretion of the district court. Accordingly, a broad construction of § 3582(c)(2) does not interfere with any general policy favoring correction of errors on direct review.

## C.

The dissent contends that our analysis of § 3582(c)(2) is incorrect in light of U.S.S.G. § 1B1.10(a) and 28 U.S.C.A. § 994(u). We respectfully disagree.

## 1.

Section 1B1.10(a) states:

> Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.

The accompanying commentary reiterates that "[e]ligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range." U.S.S.G. § 1B1.10, comment. (n.1).

As construed by the dissent, § 1B1.10(a) establishes two discrete prerequisites that an amendment must satisfy in order to support a § 3582(c)(2) motion: the amendment must be listed in § 1B1.10(c), and it must lower the "applicable" guideline range. It is undisputed that Amendment 599 satisfies the first of these requirements. We believe that this is sufficient, and that § 1B1.10(a) does not in fact impose the second requirement postulated by the dissent.

We readily acknowledge that the word "applicable," as used in § 1B1.10(a), seems to refer to the range *prescribed* by the guidelines rather than the range *applied* by the sentencing court. But we cannot square this interpretation with the inclusion of clarifying amendments in § 1B1.10(c).[4] Because the sole purpose of that subsection is to identify amendments that may be applied retroactively in § 3582(c)(2) proceedings, we cannot imagine why the Commission would include within § 1B1.10(c) any amendment that did not meet the Commission's own requirements for retroactive application. *Cf.* U.S.S.G. App. C., amend. 423 (modifying a proviso restricting § 3582(c)(2) motions and indicating that the Commission only lists amendments in § 1B1.10 if they satisfy all the requirements for eligibility for § 3582(c)(2) relief).

The dissent resolves this conundrum by treating the inclusion of clarifying amendments in § 1B1.10(c) as an invalid reading of § 1B1.10(a). But § 1B1.10(c) is not a subordinate enactment interpreting § 1B1.10(a); on the contrary, it is part of the same provision as § 1B1.10(a), adopted by the same agency and entitled to the same weight, even if it represents a departure from views previously

---

[4]While many of the amendments listed in § 1B1.10(c) effect substantive changes in the guidelines, others—like the one in question—are solely clarifying amendments. These clarifying amendments include Amendments 433, 454, 484, and 591. *See* U.S.S.G. App. C., amend. 433 (explaining that amendment "clarifies" several aspects of U.S.S.G. § 4B1.2); *id.* amend. 454 (explaining that amendment "clarifies" U.S.S.G. § 3A1.1); *id.* amend. 484 (explaining that the amendment "addresses an inter-circuit conflict" by providing a clearer definition for a term used in § 2D1.1); *id.* amend. 591 (Reason for Amendment) (explaining that the amendment "addresses a circuit conflict" by "clarify-[ing]" multiple aspects of the guidelines).

announced by the Commission, *see Rust v. Sullivan*, 500 U.S. 173, 186 (1991). Thus, in order to implement § 1B1.10 in its entirety, we are forced to choose between stretching the meaning of the word "applicable" or rendering portions of § 1B1.10(c) nugatory.

We choose the former course, for two reasons. First, as the dissent recounts, the relevant text of § 1B1.10(a) predates the inclusion of clarifying amendments in § 1B1.10(c); thus, § 1B1.10(c) represents the Commission's current views on retroactivity of guidelines amendments, and we must give effect to this reading, so long as it is consistent with applicable statutes.[5] *Cf. Stinson v. United States*, 508 U.S. 36, 46-47 (1993) (rejecting the Commission's statement regarding the role of guidelines commentary and instead relying on "the uses to which the Commission in practice has put such commentary"). Second, requiring § 3582(c)(2) petitioners to demonstrate that they are relying on substantive amendments would enhance the role of the courts in the § 3582(c)(2) process while limiting the discretion of the Sentencing Commission to give retroactive effect to its guideline revisions. Faced with a choice between limiting our own discretion and limiting that of the agency with primary responsibility for formulating and administering the guidelines, we prefer to limit our own discretion (at least until Congress, the Supreme Court, or the Commission instructs otherwise). Accordingly, we interpret § 1B1.10 to authorize § 3582(c)(2) motions based on any amendment listed in § 1B1.10(c), without regard to whether that amendment is substantive or clarifying.

2.

The final provision cited by the dissent to illuminate the meaning of § 3582(c)(2) is 28 U.S.C.A. § 994(u), which states:

> If the Commission reduces the term of imprisonment recom-
> mended in the guidelines applicable to a particular offense
> or category of offenses, it shall specify in what circum-

---

[5]The dissent maintains that the inclusion of clarifying amendments in § 1B1.10(c) is not consistent with the relevant statutes, § 3582(c)(2) and § 994(u). We have already set forth our understanding of § 3582(c)(2). We will discuss § 994(u) *infra* in Part III.C.2.

stances and by what amount the sentences of prisoners serv-
ing terms of imprisonment for the offense may be reduced.

The dissent contends that this provision precludes the Commission
from giving retroactive effect to clarifying amendments.

The plain language of § 994(u)—viewed without benefit of prior
judicial interpretations—appears to authorize retroactive application
of substantive amendments only. However, we may not construe this
statute without considering the views expressed by the Supreme Court
in *Braxton v. United States*, 500 U.S. 344 (1991). In *Braxton*, the
Supreme Court cited § 994(u) to support the proposition that "Con-
gress has granted the Commission the unusual explicit power to
decide whether and to what extent its amendments reducing sentences
will be given retroactive effect." *Id.* at 348 (emphasis omitted). Sig-
nificantly, the Court relied on this power in the course of declining
to resolve a circuit conflict that the Commission had undertaken to
resolve with a *clarifying* amendment. *See id.* at 347-48; *see also*
U.S.S.G. App. C., amend. 434 (resolving the issue left open in *Brax-
ton*).

Although the Court ultimately granted relief to Braxton on other
grounds, those grounds were "closely tied to the facts of the present
case." *Braxton*, 500 U.S. at 349. In other words, the Supreme Court
eschewed a broadly applicable legal decision in favor of a decision
narrowly limited to the facts of a particular case, in contravention of
the Court's usual preference for avoiding narrow, fact-specific deci-
sions, *cf.* Sup. Ct. R. 10 (stating that Supreme Court will only grant
certiorari "for compelling reasons" and that such reasons ordinarily
involve disputes among lower courts or "important question[s] of fed-
eral law"). Moreover, the primary reason for this choice was that the
Sentencing Commission was fully empowered to address the broader
legal issue and to rectify any harms that might have resulted from
incorrect interpretations of the relevant guideline. Indeed, the Court
speculated—consistently with our analysis of § 3582(c)(2)—that this
power may be so great as to give the Commission a role at least equal
to that of the Supreme Court in resolving disputes concerning the
interpretation of the sentencing guidelines. *See Braxton*, 500 U.S. at
348 (stating that the Court ordinarily regards the task of resolving dis-
putes among circuit courts as "initially and primarily ours" but that

"this may not be Congress' intent with respect to the Sentencing Guidelines").

Under these circumstances, it would be inappropriate to treat the statements of the Supreme Court regarding § 994(u) as mere dictum. Instead, these statements reflect a determination that the Commission has the power to give retroactive effect to clarifying amendments. This determination is binding here. We therefore conclude that neither § 994(u) nor U.S.S.G. § 1B1.10(a) precludes Goines from bringing this § 3582(c)(2) action based on Amendment 599.

IV.

For the foregoing reasons, we hold that a defendant may rely on a clarifying or hybrid amendment to support a § 3582(c)(2) motion, so long as the amendment has been designated for retroactive application and would result in application of a sentencing range lower than the range applied at the original sentencing proceeding. We further hold that Amendment 599 meets these criteria. Accordingly, we conclude that the district court erred in ruling that Goines was ineligible for § 3582(c)(2) relief as a matter of law.

The Government agrees with this conclusion but asserts that Goines nevertheless is not entitled to § 3582(c)(2) relief because no modification of his sentence is warranted under 18 U.S.C.A. § 3553(a) (West 2000). *See* 18 U.S.C.A. § 3852(c)(2) (providing that district court may reduce sentence based on retroactive change to guidelines "after considering the factors set forth in section 3553(a)"). That question, however, should be considered by the district court in the first instance. Accordingly, we vacate the decision of the district court and remand for consideration of whether Goines' sentence should be reduced.

*VACATED AND REMANDED*

LUTTIG, Circuit Judge, dissenting:

The straightforward issue in this case is whether the district court properly denied Goines' motion for reduction of sentence under 18 U.S.C. § 3582(c)(2).

The majority correctly recognizes the necessary questions to be answered in resolving this issue, first, whether the weapon enhancement pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1) that was applied to Goines' 18 U.S.C. § 922(g) conviction would have been barred by Amendment 599 had that amendment been in effect when Goines was sentenced and, second, if that enhancement would have been barred, whether Goines is eligible for relief under section 3582(c)(2) because that amendment lowered the sentencing range on which his term of imprisonment was based. But beyond this point, the majority and I are, to a large extent, in fundamental disagreement.

While I agree that Amendment 599 would have barred Goines' weapon enhancement, I do so for reasons different from those of the majority. In particular, I conclude that Goines' section 922(g) conviction was within the scope of relevant conduct for the drug-trafficking crime underlying his section 924(c) conviction, and thus is properly considered part of the "underlying offense" for purposes of Amendment 599.

More important than my disagreement with the majority on this first issue, however, is my disagreement with the majority on the second issue. As the majority itself concludes, Amendment 599 is clarifying only. It did not change the scope of Application Note 2 ("Note 2") to U.S.S.G. § 2K2.4 (1998).[1] Because Amendment 599 did not change the sentencing range made applicable to Goines by the Sentencing Commission, that amendment necessarily did not *lower* that range, which is the prerequisite for a sentence reduction under section 3582(c)(2). For this reason, Goines is not statutorily eligible for a reduction of his sentence under section 3582. The reasoning invoked by the majority in support of the contrary conclusion, I believe, comes perilously close to being, if it does not cross the line into, outright legislation.

---

[1] Unless otherwise indicated, citations in this opinion to "U.S.S.G." refer to the 2002 manual.

I.

The threshold question with which we are faced is whether Amendment 599 would have prevented the weapon enhancement Goines received on his section 922(g) conviction. The majority concludes, as do I, that the amendment would have barred that enhancement. Notable about the majority's analysis, however, is its complete failure to explain how this is true under the *text* of Amendment 599. Instead, while concluding that Goines' enhancement "falls within a gap between" Amendment 599's restrictions — a conclusion that should prompt the majority to reach the opposite holding that Amendment 599 would not have barred Goines' sentence enhancement — the majority then proceeds to simply state, without any reference to the language of Amendment 599 whatsoever, that the "best inference from th[e] juxtaposition of citations and commentary" in the Commission's accompanying "Reason for Amendment" is that the Commission intended that "a sentence for a § 922(g) offense may not be enhanced based on conduct that also resulted in a § 924(c) conviction." *Ante* at 5. Although I agree with the majority's ultimate conclusion that Amendment 599 would have barred Goines' enhancement, I cannot accept the majority's analysis. If the enhancement at issue would not have been barred by the language of Amendment 599 — accounting, as we must, for the interpretive instructions provided by the Commission — then properly that should be the end of the inquiry.

I also am unsure whether, even assuming that the majority is correct as to the "best inference" of the Commission's intent, that the weapon enhancement in this case was based on the same conduct that underlay Goines' section 924(c) offense. It was the conduct underlying the section 924(c) offense that apparently was used to justify the cross-reference to U.S.S.G. § 2X1.1, which eventually led to imposition of the section 2D1.1(b)(1) enhancement. *See* J.A. 63. The specified basis for the section 2D1.1(b)(1) enhancement is different from the conduct specified in the section 924(c) count to which Goines pled guilty. The specified basis for the enhancement was the distribution of a different drug (marijuana, not methamphetamine), on a different day (October 22, not October 20), and with a different gun (a .38 caliber antique revolver, not a .45 caliber handgun).[2] *Compare* J.A. 63-64 *with* J.A. 12-13.

---

[2]In fact, I suspect that the presentence report's choice of this conduct as the basis for the enhancement over the seemingly more obvious (and

But more importantly, I believe that the majority has overlooked the proper inquiry for determining the applicability of Amendment 599 in circumstances such as those before us. The relevant inquiry under that amendment is both broader in scope, and more complicated in application, than the majority's discussion suggests, even if the majority's conclusion as to the application of that amendment in the specific instance of identity between the conduct basis for the weapon enhancement and the conduct underlying the section 924(c) conviction may necessarily follow. In particular, I believe that a weapon enhancement is barred under Amendment 599 *both* in the circumstance where the enhancement is being applied in determining the sentence for the specific offense underlying a defendant's section 924(c) conviction *and* in the circumstance where the enhancement is being applied in determining the sentence for any counts of conviction within the scope of relevant conduct for that specific underlying offense.

By its terms, the first paragraph of Amendment 599 (the one relevant to the issue here) limits its application to cases where "a sentence under this guideline [section 2K2.4] is imposed in conjunction with a sentence for an underlying offense . . . ." U.S.S.G. supp. to app. C, amend. 599. If that has occurred, the amendment then precludes applying weapon enhancements "when determining the sentence for the underlying offense." *Id*. However, the underlying offense for the section 924(c) count listed in the indictment was the drug trafficking crime of "possession an [sic] possession with intent to distribute methamphetamine" "on or about October 20, 1999," J.A. 13, *conduct which was subsumed under dismissed count one*. Because no sentence was imposed on that count, the language of Amendment 599 would seem to dictate that the amendment's bar would be inapplicable.

The Commission, however, has defined "offense" to mean "the offense of conviction *and all relevant conduct under § 1B1.3* (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. n.1(k) (emphasis added). And in its Reason for Amendment, the Commission specifi-

---

more culpable) conduct specified as the § 924(c) underlying offense in the indictment was an attempt to avoid the scope of Note 2's prohibition.

cally stated its intention that courts apply this definition to "underlying offense" in Amendment 599:

> The amendment directs that no guideline weapon enhancement should be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction, *nor for any conduct with respect to that offense for which the defendant is accountable under § 1B1.3* (Relevant Conduct). Guideline weapon *enhancements may be applied*, however, when determining the sentence *for counts of conviction outside the scope of relevant conduct for the underlying offense* (e.g., a conviction for a second armed bank robbery for which no 18 U.S.C. § 924(c) conviction was obtained).

U.S.S.G. supp. to app. C, amend. 599 (emphasis added).

Since Goines stipulated in his plea agreement "that there is a sufficient factual basis to support each and every material allegation contained within" the indictment, *see* J.A. 20, those acts listed in count one (and surely those specifically underlying his section 924(c) conviction) would appear to be properly considered "offenses of conviction" for these purposes, even though no separate conviction was actually obtained.[3] *See* U.S.S.G. § 1B1.2(c). Therefore, if Goines' section 922(g) offense was a count of conviction within the scope of relevant conduct to his underlying drug trafficking crime, then the weapon enhancement he received would have been barred by Amendment 599. *See United States* v. *Brown*, 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (concluding that "Amendment 599 abrogated *Flennory* to the extent that the new application note expanded the definition of underlying offense to include the relevant conduct punishable under U.S.S.G. § 1B1.3," but declining to decide "whether a § 922(g) conviction constitutes relevant conduct within the meaning of Application Note 2").

---

[3]In fact, given that an element of a section 924(c) offense is engaging in a prosecutable federal "crime" — either one of "violence" or "drug trafficking" — a conviction on a section 924(c) offense would seem inherently to render the specified underlying conduct an "offense of conviction," at least as meant by Amendment 599.

Because the district court applied the weapon enhancement to the section 922(g) conviction as the result of a cross-reference from the guideline applicable to that conviction, and after calculating a base offense level including the total amount of drugs found to have been distributed by Goines, I believe the district court necessarily concluded that Goines' section 922(g) conviction was within the scope of relevant conduct for his underlying drug-trafficking crime. *See* U.S.S.G. § 1B1.3 ("Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two . . . *shall be determined* on the basis of" factors defining relevant conduct.) (emphasis added). It is, then, for this reason that the district court erred in its conclusion that Amendment 599 would not have barred Goines' weapon enhancement.

## II.

The fact that Amendment 599 would have barred the weapon enhancement Goines received on his section 922(g) offense does not necessarily mean, of course, that he is eligible to receive the benefit of that amendment through a sentence reduction under section 3582(c)(2). As to this second question, the majority concludes that Goines is so eligible because Amendment 599 lowered the sentencing range that was *applied by the district court*. Section 3582(c)(2), however, authorizes a sentence reduction *only* if the amendment lowers the sentencing range *prescribed by the sentencing guidelines*. Since Amendment 599 is clarifying, and thus does not make any change in the applicable guidelines, a sentence reduction under section 3582(c)(2) plainly is not authorized on the basis of that amendment. Indeed, the Commission's binding interpretation as to when a section 3582(c)(2) reduction is authorized prevents a court from granting a sentence reduction based on a clarifying amendment, and the unambiguous meaning of section 3582(c)(2) precludes the Commission from authorizing such a reduction at all — the majority's contrary conclusion notwithstanding.

## A.

Although the majority recites the text of section 3582(c)(2) above, that text bears repeating here:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment *based on a sentencing range that has subsequently been lowered by the Sentencing Commission* . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(2000) (emphasis added). Section 3582(c)(2) thus permits a sentence reduction for Goines if, *inter alia*, Amendment 599 "lower[ed]" the "sentencing range" on which his term of imprisonment was "based." I would have thought there could be no doubt as to the interpretation of these terms. However, any doubt in this respect is entirely eliminated by reference to U.S.S.G. § 1B1.10 — the policy statement setting forth the Commission's unambiguous view on the necessary conditions for a section 3582(c)(2) sentence reduction to be both "authorized" and "warranted." In the Commission's own words, a reduction in a defendant's term of imprisonment under section 3582(c)(2) is "authorized" when "the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below." U.S.S.G. § 1B1.10(a). The Commission's interpretation is unequivocal: eligibility for a section 3582(c)(2) reduction is "triggered *only* by an amendment listed in subsection (c) that *lowers* the *applicable guideline range*." U.S.S.G. § 1B1.10, cmt. n.1 (emphasis added).

We are bound to apply section 1B1.10(a)'s direction as to when a section 3582(c)(2) sentence reduction is authorized. Although section 1B1.10 is a policy statement and not a guideline, we are obliged to follow those policy statements that, consistent with statutory dictates, prohibit specified action by a court. As the Supreme Court has made clear,

> [t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements. . . . "[*W]here* . . . *a policy statement prohibits a district court from taking a specified action*, the statement is an authoritative guide to the meaning of the applicable Guideline."

*Stinson* v. *United States*, 508 U.S. 36, 42 (1993) (quoting *Williams* v. *United States*, 503 U.S. 193, 201 (1992)). Section 1B1.10 meets this requirement, given its specific explication of the necessary conditions for a sentence reduction under section 3582(c)(2).[4] And even if it did not, section 3582(c)(2) itself only allows a sentence reduction if such "is consistent with applicable policy statements issued by the Sentencing Commission," which section 1B1.10 indisputably is.

Once section 3582(c)(2) is properly understood, the logic as to why it does not authorize a reduction in Goines' sentence is simple and, I would have thought, self-evident. A sentence reduction under section 3582(c)(2) is only authorized when an amendment lowers the applicable guideline range as that range has been defined by the Sentencing Commission. And as the majority itself concludes, Amendment 599 "*changes nothing concerning the legal effect of the guidelines*, but merely clarifies what the Commission deems the guidelines to have already meant." *Ante* at 7 (quoting *United States* v. *Capers*, 61 F.3d 1100, 1109 (4th Cir. 1995)) (emphasis added). Because Amendment 599 made *no change at all* to the guideline range that could be correctly applied to Goines — *i.e.*, the guideline range *applicable* to him — it necessarily did not *lower* that range.[5]

---

[4]While the *Williams* court spoke in terms of a policy statement's interpretation of a *guideline*, I have no doubt that this limitation applies equally to a policy statement interpreting a *statute*. *See United States* v. *Headrick*, 963 F.2d 777, 781 (5th Cir. 1992) ("[P]olicy statements may carry [the force of guidelines] when they inform the application of a particular guideline *or statute*.") (emphasis added).

[5]A reduction in Goines' sentence might be thought justified on the reasoning that, although it declined to concede the point expressly, the Commission did view Amendment 599 as substantive in that it *expanded* the scope of "underlying offense," thus potentially lowering the guideline range applicable to Goines. (The government appears to embrace such an argument in its supplemental brief, though without explicitly labeling the amendment "substantive."). Arguably, the Commission's very listing of that amendment in section 1B1.10(c) reflects that it held this view. *See*, *e.g.*, U.S.S.G. § 1B1.10, cmt. background ("The Commission has not included in this policy statement amendments that generally reduce the maximum of the guideline range by less than six months.").

I hesitate, however, to conclude that Amendment 599 is substantive (at least as it applies to Goines' circumstances), because of the utterly incon-

Admittedly, from the conclusions that Amendment 599 would have barred Goines' weapon enhancement and that Note 2 has the same scope as Amendment 599, it follows that the district court committed legal error when it applied the enhancement during Goines' original sentencing. That is, since Amendment 599 had no effect on the ability of courts to apply enhancements such as the one Goines received on his section 922(g) conviction, application of the instant enhancement would have been contrary to Note 2, as properly construed, both before and after the enactment of Amendment 599. But the fact that the district court so erred does not mean that Amendment 599 *lowered* the guideline range applicable to Goines, as is required to authorize a sentence reduction. Such error only means that the guideline range actually applied to Goines was not the guideline range that was, in fact, "applicable" to him. The proper way to seek redress for that error, however, is by argument on direct appeal and not, as the majority holds today, through motion under section 3582(c)(2).

---

sequential change in language from Note 2 to Amendment 599. While Amendment 599 provides more specific direction as to the scope of "underlying offense," the fact remains that the guidelines at the time Goines was sentenced (as they do today) defined "offense" to include "the offense of conviction *and all relevant conduct under § 1B1.3* (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1, cmt. n.1(l) (1998) (emphasis added). Substituting this definition of "offense" into Note 2 would seem to render Note 2 identical in substantive scope to Amendment 599. This view, of course, is reinforced, if not fully confirmed, by the Commission's own characterization of the effect of its change, including its repeated characterization of the change as merely clarifying. *See* U.S.S.G., supp. to app. C, amend. 599 (Reason for Amendment). In particular, the Commission stated that "[t]he amendment *clarifies application of the commentary, consistent with the definition of "offense"* found in § 1B1.1 (Application Note 1(l)) and with general guideline principles. It *addresses disparate application* arising from conflicting interpretations of the current guideline in different courts . . . ." *Id.* (emphasis added).

In view of the above, and assuming that this conclusion applies to both paragraphs of Amendment 599, I think it is more likely that the Commission simply concluded in error that clarifying amendments could serve as predicates for a sentence reduction under section 3582(c)(2). Therefore, I defer to the majority's characterization of the amendment.

Even if there had been prior Fourth Circuit precedent that required the conclusion reached by the district court — rendering Amendment 599 a "hybrid" amendment in the majority's terminology — I would conclude the same. In such case, that circuit precedent would have also been in error, in that Note 2 would have barred an enhancement permitted by the precedent. To be sure, under these circumstances Amendment 599 would have changed the law within this circuit (at least in its prospective applications) because that law was previously defined by the precedent interpreting old Note 2. This still would not mean, however, that Amendment 599 lowered the guideline range applicable to Goines because that amendment still would have made no change in the scope of Note 2 as intended by the Commission.

### B.

Additionally, I reject the argument made by Goines that, in the determination of whether a section 3582(c)(2) sentence reduction is authorized, "it is irrelevant whether Amendment 599 is substantive or clarifying," and all that matters is that the Commission designated Amendment 599 in section 1B1.10(c) as capable of retroactive application. Supplemental Br. of Appellant at 3-6. Goines contends that, in this regard, section 1B1.10 stands in contrast to U.S.S.G. § 1B1.11, for which the distinction between substantive and clarifying amendments is relevant. Section 1B1.11(b)(2) requires a court applying an earlier version of the Guidelines Manual than that in effect at sentencing to "consider subsequent amendments [to the guidelines], to the extent that such amendments are clarifying rather than substantive changes." Goines argues from the fact that relief under section 1B1.11(b)(2) is explicitly predicated on this distinction, and relief under sections 3582(c)(2) and 1B1.10(a) is not, that the distinction is irrelevant under the latter provisions.

It is true that Congress has "granted the Commission the unusual explicit *power* to decide whether and to what extent its *amendments reducing sentences* will be given retroactive effect . . . . in [section] 1B1.10 . . . ." *Braxton* v. *United States*, 500 U.S. 344, 348 (1991) (citing 28 U.S.C. § 994(u)) (second emphasis added). But those amendments must first actually *reduce* sentences in the manner dictated by the statutory directive, section 994(u). That section dictates that the Commission's power to reduce sentences through designation of

amendments as retroactively applicable applies "[i]f the Commission *reduces the term of imprisonment recommended in the guidelines* applicable to a particular offense or category of offenses." Where an amendment does not change the scope of a guideline, the Commission cannot be said to have so reduced the guideline-recommended term of imprisonment. That neither Congress nor the Commission conditioned a section 3582(c)(2) sentence reduction by terms on the existence of a "substantive," as opposed to "clarifying," change is of no moment. For in substantive effect, Congress so conditioned the sentence reduction, through its authorization of such only in circumstances where an amendment actually reduces the "term of imprisonment recommended in the guidelines." Amendments that do not — otherwise known as clarifying amendments — by definition fail to satisfy the statutory requirements. *See United States* v. *LaBonte*, 520 U.S. 751, 757 (1997) (stating that "[b]road as [the Commission's] discretion [in formulating guidelines] may be, however, it must bow to the specific directives of Congress . . . . If the Commission's revised commentary is at odds with [the statutory directive's] plain language, it must give way.").

It is for this reason that, even were we not bound by the construction of section 3582(c)(2) provided in section 1B1.10(a), I would be confident that section 1B1.10(a) provided the correct, and indeed *necessary*, interpretation of the requirements for authorization of a section 3582(c)(2) sentence reduction. Accordingly, I believe the cases Goines cites in support of his argument are, to the extent they suggest that clarifying amendments can ever support a section 3582(c)(2) sentence reduction, simply in error. *See*, *e.g.*, *United States* v. *Lykes*, 73 F.3d 140, 143 (7th Cir. 1995) ("The question whether an amendment is substantive or clarifying . . . is, however, irrelevant to the implementation of § 1B1.10 . . . as long as the amendment in question reduces a term of imprisonment for some offense. Indeed, one might expect that such amendments would *ordinarily* be substantive.") (emphasis added). And to the extent the Commission, in designating Amendment 599 as retroactively applicable, construed section 3582(c)(2) to authorize sentence reductions for amendments that are only clarifying, I would hold that its interpretation is contrary to statute and invalid. *See United States* v. *Banks*, 130 F.3d 621, 624-25 (4th Cir. 1997) (stating that commentary is binding "[u]nless contrary to federal law").

## C.

Once section 3582(c)(2) is correctly interpreted, the implausibility of the majority's preferred reading of that section becomes manifest, for even on the majority's own construction of the relationship between Amendment 599 and Note 2, a sentence reduction under section 3582(c)(2) is not authorized on the basis of Amendment 599.

In its attempt to justify the opposite conclusion, the majority creates a false dichotomy between "broad" and "narrow" interpretations of the term "sentencing range" as used in section 3582(c)(2), stating that both are plausible, but that the former better serves various policy considerations identified by the majority. *See ante* at 8-9. It is not clear which interpretation, as a matter of necessity, is broader and which is narrower. But only one — the latter — is plausible.[6] The other, the majority's "broad" reading of section 3582(c)(2), requires a court to determine whether the sentencing range applied by the particular district court in question has been lowered by a retroactive amendment. As noted above, since the sentencing, or guideline, range actually applied by the district court to Goines was erroneous, then that range was, in fact, *in*applicable. Thus, it follows ineluctably that Amendment 599 made no change to the *applicable* guideline range, and thus that a reduction in Goines' sentence is not authorized under section 3582(c)(2).

The majority seems to recognize the implausibility of its preferred construction of section 3582(c)(2), because it declines to rely on the language of section 1B1.10(a) to support that construction, despite the fact that section 1B1.10 is directed to the precise circumstance facing us in this case: Its expressed goals are to "provide[ ] guidance for a court when considering a motion under 18 U.S.C. § 3582(c)(2) and [to] implement[ ] 28 U.S.C. § 994(u)," the statutory directive regarding the Commission's power to authorize sentence reductions through

---

[6]The majority places significant emphasis on the fact that no other court has reached the conclusion I have in this case. Without addressing these arguments in detail, I imagine that those earlier courts that, at least implicitly, reached the contrary interpretation of section 3582(c)(2) suffered (to the extent they gave much thought to the question at all) from interpretive errors similar to those made by the majority.

retroactively applicable amendments. U.S.S.G. § 1B1.10, cmt. background. Unlike the language of section 3582(c)(2), the language of section 1B1.10(a) is insusceptible, or certainly is not as easily susceptible, to the kind of misinterpretation to which the majority falls prey in its reading of section 3582(c)(2).

The majority's explanation as to why the unambiguous language of section 1B1.10(a) does not preclude its interpretation of section 3582(c)(2) is unconvincing. While admitting (as it must) that mine is the more natural reading of section 1B1.10(a), the majority nevertheless rejects this reading of the provision, contending that it is incompatible with what it asserts is the Commission's current interpretation of section 1B1.10(a), an interpretation that the majority maintains is necessarily implied by the Commission's actions — though such has never been explicitly declared by the Commission.[7]

But the Commission's interpretation is, like any agency's interpretation of its own regulations, invalid if it is plainly inconsistent with that section's necessary meaning. *See Stinson*, 508 U.S. at 45 (making the rule that "an agency's interpretation of its own regulations [which] does not violate the Constitution or a federal statute . . . must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation" applicable to the Commission's commentary interpreting the guidelines) (internal quotation marks omitted). And section 1B1.10(a) simply cannot bear the interpretation that the majority suggests is currently held by the Commission and which the majority today adopts for this circuit, a conclusion that, as explained below, not only obtains from section 1B1.10(a)'s unambiguous meaning, but that is also required by the statutory directive that section 1B1.10(a) implements.

1.

I must confess that I actually do not see any way that the word "applicable" in section 1B1.10(a) can legitimately be read to refer to the

---

[7]Assuming that each of the ostensibly clarifying amendments listed in section 1B1.10(c) is clarifying in all respects, I do not disagree that such listings demonstrate the Commission's view that section 1B1.10(a) can potentially be satisfied by clarifying amendments.

guideline range "applied" by the district court in the particular case in which sentence reduction is sought. In fact, upon reflecting on the two terms in juxtaposition, it is obvious that the Commission, when *originally* promulgating section 1B1.10(a), could not have shared the majority's interpretation of section 3582(c)(2). If it had, it would not have directed, as it did, that the amendment must lower the guideline range appl*icable* to a defendant. Rather, it would have directed that it must lower the guideline range appl*ied* to that defendant, or something of similar focus. In fact, if the Commission had originally interpreted section 3582(c)(2) as the majority contends it now does, appl*ied* would be so far a superior, and apparent, term for section 1B1.10(a) that the use of appl*icable* to convey that "broad" meaning would be almost inconceivable.

That the Commission did not originally hold the majority's interpretation of section 1B1.10(a) is evidenced by examination of that section as it stood in 1989, when the section first took effect. Although the relevant language in section 1B1.10(a) at that time is identical to its current form, none of the amendments then designated as retroactively applicable can be fairly construed as merely clarifying. *See* U.S.S.G. § 1B1.10(a), (d) (1989) (listing amendments 126, 130, 156, 176, and 269 as retroactively applicable). The fact that the Commission's interpretation of subsection (a) may have expanded over time is irrelevant if, as is the case here, section 1B1.10(a) cannot bear the Commission's current interpretation.[8]

The majority's argument to the contrary cannot withstand careful examination. That argument examines a policy statement, section 1B1.10(a) (which states that a reduction in sentence is "authorized" if an amendment "lower[s]" "the guideline range applicable to [a] defendant), whose interpretive commentary recites that the pertinent conditions are "only" satisfied by those amendments "that lower[ ] the

---

[8]But my position is not, as might be suggested by the majority's citation to *Rust*, *ante* at 14-15, that the Commission's interpretation is invalid because it represents an unexplained departure from the Commission's longstanding views, although that may well be the case; my point, again, is that the Commission's current interpretation is not a "plausible construction" of, *i.e.*, is plainly inconsistent with, the language of section 1B1.10(a). *Ehlert* v. *United States*, 402 U.S. 99, 105 (1971).

applicable guideline range," yet concludes that section "1B1.10(a) does not in fact impose" a requirement that "an amendment must lower the 'applicable' guideline range" in order for that amendment to satisfy section 1B1.10(a)'s conditions. *Ante* at 13-14 (quoting U.S.S.G. §§ 1B1.10(a), 1B1.10 cmt. n.1). According to the majority, this counterintuitive (to say the least) result is required because the natural reading of section 1B1.10(a) "cannot [be] square[d]" with the Commission's interpretation thereof. *Id.* at 4.

While the majority correctly assesses the relationship between the Commission's interpretation and the plain language of section 1B1.10(a), the majority misapprehends the scope of the deference we need accord the Commission. I do not believe, as the majority apparently does, that the Commission can avoid full judicial review of its interpretation of section 1B1.10(a) by implicitly grounding that interpretation in a different subsection of section 1B1.10 altogether, *i.e.*, through addition of clarifying amendments to section 1B1.10(c).

That is not to say, of course, that I would not defer to that interpretation were it a *plausible* one. But the requirement that we accord controlling weight to the Commission's interpretations of the guidelines — which is a species of "*Seminole Rock* deference," the general principle of deference to an agency's interpretation of its own regulations — does not apply at all when the guideline language is "unambiguous." *United States* v. *Deaton*, 332 F.3d 698, 709 (4th Cir. 2003) (citing *Bowles* v. *Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945)). In such cases, "the regulation's plain language, not the agency's interpretation, controls." *Id.* Not only is section 1B1.10(a), as detailed above, *unambiguous*, but the majority offers no case for its *ambiguity* beyond the fact of the Commission's contrary interpretation. That, alone, is insufficient to justify, much less require, our deference.

2.

Moreover, the interpretation of section 1B1.10(a) that I espouse is necessary to confine that section within the bounds of the duties imposed upon, and powers implicitly granted to, the Commission by the statute that section 1B1.10(a), by express terms, "implements": section 994(u). As explained above, *see supra* at 26-27, the authority

to authorize sentence reductions conferred by section 994(u) is limited to amendments that "reduce[ ] the term of imprisonment recommended in the guidelines"; however, the Commission's current interpretation of section 1B1.10(a) (if that it be) would allow it to authorize sentence reductions based on amendments that do not lower any guideline-recommended term of imprisonment, but instead only clarify what the pre-existing guidelines recommended. Simply put, that interpretation would exceed the Commission's statutory authority and could not stand, as the majority effectively concedes when it observes that "[t]he plain language of § 994(u)—viewed without benefit of prior judicial interpretations—appears to authorize retroactive application of substantive amendments only." *Ante* at 16.

The majority ultimately eschews reliance on the natural reading of the statute, however, seeking refuge instead in a strained reading of the Supreme Court's decision in *Braxton*. The majority claims that, despite the plain statutory language to the contrary in section 994(u), the *Braxton* court decided that the Commission could designate clarifying amendments as retroactively applicable. The majority asserts that *Braxton* precludes us from construing section 994(u) in accordance with its plain meaning, even though the case was decided on other grounds, as the majority admits, and even though *Braxton* did not mention — or even suggest — the issue that divides this court.

*Braxton*, however, did not hold that the Commission's section 994(u) power applies to clarifying amendments, and we are not bound by any construction — or more accurately, reconstruction — of its reasoning which suggests otherwise. At the time of *Braxton*, an application note for U.S.S.G. § 1B1.2 provided that, "in the case of a conviction by plea of guilty . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction, [the court shall apply the guideline in such chapter] most applicable to the stipulated offense." *Braxton*, 500 U.S. at 346. The first of two issues raised in the case was whether, to be covered by this proviso, a stipulation needed to be contained in a formal plea agreement, an issue that had divided the courts of appeals. *See id.* at 346-47. *After Braxton's petition for certiorari was granted*, "the Commission requested public comment on whether § 1B1.2(a) should be 'amended to provide expressly that such a stipulation must be as part of a formal plea agreement,' which [wa]s the precise question raised by the first part

of Braxton's petition . . . ." *Id.* at 348 (1991) (quoting 56 Fed. Reg. 1891 (Jan. 17, 1991)). Observing that Congress may not have intended for the Court to have "initial[ ] and primar[y]" responsibility for resolving circuit conflicts over the guidelines (as would "[o]rdinarily" be the case), and after noting both the commission's "*duty* to review and revise the Guidelines" and its "unusual explicit *power*" to designate certain of its amendments as retroactively applicable, the Court "[chose] not to resolve the first question presented in the current case." The Court reasoned that "the Commission has already undertaken a proceeding that will eliminate circuit conflict over the meaning of § 1B1.2" and that "the specific controversy before us can be decided on other grounds . . . ." *Id.* at 348-349.[9]

The majority's fundamental error in its reading of *Braxton* lies in its assumption that, since *Braxton* referenced the Commission's retroactive designation power in the context of a guideline for which a putatively clarifying amendment *eventually* issued, the Court must have concluded that this power applied to clarifying amendments. But there simply is no indication in the *Braxton* opinion that the Court was aware of what, *if any*, amendment the Commission would propose, much less that any amendment would necessarily be clarifying in the sense used here. Thus, that opinion cannot possibly be said to have turned on the nature of the amendment that the Commission finally promulgated.

For one, the opinion only notes that the Commission had *begun* a proceeding to resolve the issue; the opinion contains no indication of what any forthcoming amendment would, in fact, provide, nor whether that amendment would make a clarifying or substantive change to the guideline. The notice of proposed amendment from which the Court quoted provides no better indication of what form any amendment would take. To the contrary, since the request for

---

[9]I disagree with the majority's view that *Braxton* justified its decision to pass on the first issue in part because "the Sentencing Commission was fully empowered . . . to rectify any harms that might have resulted from incorrect interpretations of the relevant guideline." *Ante* at 16. That is too broad a reading of the Court's explanation for bypassing the stipulation issue; the opinion does not nearly construe the Commission's powers so expansively.

comments is included under the heading "Miscellaneous Substantive, Clarifying, Conforming, and Technical Amendments," but does not indicate which of these any amendment to section 1B1.2(a) would be, the notice suggests that the Commission had not yet formally decided on the character of any anticipated amendment. *See* 56 Fed. Reg. 1891.[10]

In light of the above, and in light of the fact that after describing the Commission's power in this regard, *Braxton* cites directly to section 994(u) — the "plain language" of which only covers substantive amendments — *without comment*, *Braxton* cannot be read as expanding the scope of the Commission's section 994(u) power beyond the clear language of that directive. Rather, the opinion is better (if not compellingly so) read as having used the "unusual" nature of the Commission's power in this regard as evidence of the different role Congress envisioned for the Supreme Court as to guidelines issues, and no more — a point that would carry weight even if, as I contend, the Commission's section 994(u) authority is limited to substantive amendments.

### III.

Even if I were to accept the essential plausibility of the majority's "broad" interpretation of section 3582(c)(2), I would reject the reasons it offers for preferring that construction over the one that comes naturally from the statute and is dictated by the policy statement. On this point, the majority provides three sets of justifications for its preferred interpretation, the first and third of which can be dismissed with relatively little effort, and in the second of which lies what is, perhaps, the majority's most troubling assertion.

### A.

The majority first contends that a "narrow" interpretation would interfere with the Commission's intended role in resolving circuit conflicts over the guidelines, and thereby it would "shift[ ] responsibility for resolving [such] circuit conflicts" from the Commission to

---

[10]Although the phrasing of the Commission's request for comments might suggest that a clarifying amendment would be forthcoming, it certainly does not require that result.

the Supreme Court. *Ante* at 10. I recognize that this circuit will not currently consider as clarifying those amendments that "cannot be reconciled with [our] circuit precedent" interpreting the old guideline. *United States* v. *Neilssen*, 136 F.3d 965, 969 (4th Cir. 1998). I am unconvinced, however, that employing the proper interpretation of section 3582(c)(2) would necessarily, and significantly, increase the Supreme Court's burden in this regard. To the extent there is the potential for such an increase, the courts of appeals, when constituted *en banc*, can reduce that burden by correcting panel guideline interpretations shown to be in error by subsequent clarifying amendments.

More to the point, however, the majority's argument here incorrectly assumes that the Commission already legitimately has the power that the majority's "broad" interpretation would, in fact, confer upon that body. But the Commission cannot "lose the authority," *ante* at 10, which it never properly had. I simply do not see *any* evidence that Congress, in phrasing the exemption set forth in section 3582(c)(2), meant the "sentencing range" as applied by courts, and I see *every* indication that Congress meant the "sentencing range" as dictated by the language of Note 2 and the relevant commentary directing its construction. Again, I do not believe the first meaning even to be plausible.

As its third set of justifications for a "broad" construction, the majority concludes that its reading of section 3582(c)(2) would not "have effects that Congress sought to avoid." *Ante* at 12. Of course, whether or not "the disruption of finality engendered by a broad interpretation of § 3582(c)(2) is consistent with the legislative design," *ante* at 13, depends upon whether that interpretation is consistent with the statute at all. I do not believe that it is, and I do not believe any of the reasons given under this prong of analysis can justify the majority's interpretation of section 3582(c)(2).

### B.

As I suggested above, it is the majority's second set of justifications — through which it argues that a "narrow" interpretation would "undermine the remedial scheme created by the Sentencing Reform Act," *ante* at 10 — that epitomizes its analytical error. On this point, to recite the majority's essential reasoning is to convince of its

untenability. The majority reasons as follows: A harm occurs that should be remedied when a defendant is sentenced under an interpretation of the guidelines that is subsequently shown to be incorrect by a retroactively applicable amendment. Yet the "prospects for appellate relief are uncertain at best when the applicable guideline is ambiguous," and "§ 2255 provides virtually no remedy at all." Therefore, the majority concludes, the "broad" interpretation of section 3582(c)(2) best serves the purposes of the scheme established by the Sentencing Reform Act. *Ante* at 10-12.

In such fashion is "clarify" read to mean "lower." This is not statutory interpretation — this is open legislation.

We should not resort to what are admittedly unadulterated policy considerations to force a meaning onto a statute that it cannot reasonably support. It would be one thing if it were absurd to conclude that Congress would allow the Commission to authorize sentence reductions for amendments that make substantive changes, but not for those that only clarify the proper interpretation of the existing guideline. But there is nothing at all odd about the idea that Congress intended the "uncertain" avenue of direct appeal to be the primary means to address what are, at base, only errors of interpretation, and where the only effect of a clarifying amendment is to make a court's error clearer now than it was at sentencing. Section 3582(c)(2) is reserved for when the Commission has made an actual *change* to the guideline which *lowers* the guideline range applicable to a defendant, a special case which justifies allowing the sentencing court — at its discretion — to give the defendant the benefit of that retroactive change.

IV.

In dissenting from the opinion of the majority, I do not assert any error in its conclusion that allowing the Commission to make clarifying amendments retroactively applicable to correct erroneous guideline interpretations would be consistent with the general purposes of the Sentencing Reform Act (though I do not necessarily agree, either). Were other circuits to reach the conclusion I have here, I would not be surprised if Congress actually granted the Commission such power, although I suspect there are many who would be opposed.

Rather, I believe, and would so hold, only that under the law as it presently exists, the Commission cannot authorize, and a court cannot grant, a section 3582(c)(2) sentence reduction based on an amendment which, like Amendment 599, did not reduce an applicable guideline range, but, rather, only clarified the Commission's interpretation of the applicable guideline range.

Accordingly, I dissent.